COMMONWEALTH vs. RICHARD F. AMES.

Hampshire. May 8, 1991. - July 9, 1991.

Present: LIACOS. C.J., WILKINS, ABRAMS. O'CONNOR. & GREANEY. JJ.

*Homicide. Motor Vehicle*, Operating under the influence. *Practice, Criminal*, Required finding, Instructions to jury. *Evidence*, Intoxication, Right to obtain evidence, Breathalyzer test, Blood alcohol test. *Constitutional Law*, Right to obtain evidence.

Sufficient evidence was presented at the trial of an indictment for vehicular homicide while operating under the influence of intoxicating liquor to submit the case to the jury. [605]

Dismissal of an indictment for motor vehicle homicide while operating under the influence of alcohol was not required by reason of State police officers' failure to tell the defendant at booking, several hours after the accident, that he could have an examination by a physician of his choice and at his expense, in circumstances where the defendant had been taken to a hospital before he was booked to receive medical treatment and had there been offered a blood alcohol content test, which he declined. [605-608]

There was no merit to a criminal defendant's challenges to the judge's jury instructions on an indictment for motor vehicle homicide while operating under the influence of alcohol. [608-610]

INDICTMENT found and returned in the Superior Court Department on November 14, 1989.

A motion to dismiss was heard by *John F. Moriarty*, J., and the case was tried before him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Stella Xanthakos* (*Ellen M. LaCroix* with her) for the defendant.

*Danielle J. Barshak*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. In this appeal from his conviction of vehicular homicide while operating under the influence of intoxicating liquor (G. L. c. 90, § 24G [a] [1990 ed.]), the defendant argues that his motion to dismiss the charge should have been allowed because the police failed to give him notice of his statutory right to an examination by a physician of his choice. See G. L. c. 263, § 5A (1990 ed.).[1] He also contends that the evidence did not warrant his conviction and that the judge erred in several respects in his jury instructions.[2] We transferred the case to this court on our own motion. We affirm the conviction.

The jury could have found the following facts. About 8:20 P.M. on October 1, 1989, State police trooper Richard P. Leydet found the dead body of James A. Hayes on the side of route 112 in Huntington. The victim's badly damaged motorcycle lay nearby. A pickup truck owned by the defendant's father, with extensive front end damage, straddled the double line in the middle of the road. There was a "smell of alcohol" inside the vehicle. The police spoke with the defendant's father who came to the scene. After several attempts to locate the defendant, Leydet and the defendant's father, with two other police officers, went to the Worthington home of the defendant's brother. They arrived there about 11:30 P.M., more than three hours after the accident. The defendant was sleeping in the basement. He was not easily awakened. Leydet concluded that the defendant was under the influence of alcohol. The defendant smelled of alcohol, had bloodshot and watery eyes, and moved slowly. The defendant was arrested for operating a motor vehicle while under the influence of alcohol. Because the defendant was limping and wanted

---

[1]The defendant was also convicted of unlawfully leaving the scene of a personal injury accident. He does not challenge that conviction in this appeal.

[2]The defendant moved for a new trial and a required finding of not guilty of so much of the negligent homicide charge as alleged driving under the influence of alcohol. The judge denied the motion. The defendant does not argue here that the motion for a new trial was erroneously denied on any ground that is not presented on direct appeal.

medical attention, Trooper Leydet took him to a hospital in Westfield. We shall set forth what happened next when later we discuss the defendant's claim that he was denied his statutory right to a medical examination by a physician of his choice.

There was evidence that the defendant had consumed nine beers during the day, and that a bartender at the last saloon he had visited prior to the accident had refused to serve him any more alcoholic beverages. A friend had driven the defendant from this drinking establishment in the defendant's vehicle. The friend left the vehicle when they arrived at the friend's residence. It was there that the defendant began driving. After the accident, saying that his truck had become stuck in a ditch, he persuaded an acquaintance who lived about one mile from the accident scene to drive him to his brother's house. She noticed that the defendant smelled of alcohol.

1. The defendant's argument that he was entitled to a required finding of not guilty must fail under the standard expressed in *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). Although there was evidence that tended to show that the defendant was not under the influence of alcohol at the time of the accident, the evidence that we have just recited presented a case for the jury.[3]

2. The principal issue in this appeal concerns the defendant's claim that the charge of vehicular homicide should have been dismissed because the police failed to advise the defendant of his right to an independent medical examination and failed to make a reasonable opportunity for such an examination available, as provided by G. L. c. 263, § 5A.

---

[3]The defendant argues that the judge erred in admitting photographs taken of him when he was booked at the Russell police barracks. Trooper Leydet testified that the photographs were fair and accurate representations of the defendant at the time. The admission of these photographs as a true representation of the defendant was a matter for the judge to pass on as a preliminary matter. See *Howe* v. *Boston*, 311 Mass. 278, 281-282 (1942). He did not abuse his discretion in deciding that preliminary question as he did.

Section 5A requires that the police officer in charge of the police station or other place of detention inform a person held in custody in such a place and charged with operating a motor vehicle while under the influence of intoxicating liquor, immediately on being booked, that he has the right "at his request and at his expense, to be examined immediately by a physician selected by him." Section 5A further requires that the police afford that person a reasonable opportunity to exercise that right. On being booked, a person must also be given a copy of § 5A unless a copy is posted in a conspicuous place to which the person has access.

The § 5A issue in this case must be resolved on the basis of the police conduct. We turn, therefore, to the judge's findings on the defendant's motion to dismiss the charge, picking up from the point where Trooper Leydet arrested the defendant at his brother's house and took him to a hospital. On the way to the hospital, Leydet told the defendant and his father, who came along in the cruiser, that he could have either a blood alcohol test at the hospital or, after his release from the hospital, a breathalyzer test at the State police barracks in Russell.

Two State police sergeants met the defendant at the hospital. One of them told the defendant that, since he was at the hospital, he could take a blood alcohol test but that he could not take a breathalyzer test because there was no breathalyzer machine at the hospital. The defendant declined a blood test, saying that he wanted a breathalyzer test. The sergeant told him that a breathalyzer test was not an option, and asked him to take a blood test which the defendant refused to do.

The hospital released the defendant at 12:45 A.M. (October 2), and Trooper Leydet drove the defendant to the Russell barracks for booking. He arrived there at 1:10 A.M. His father and other family members were there. The police gave the defendant no further advice as to his rights. A copy of G. L. c. 263, § 5A, was hanging on the wall by the booking desk, but no one directed his attention to it. He was released from custody at 2:15 A.M.

The judge adopted the option mentioned in *Commonwealth* v. *Andrade*, 389 Mass. 874, 882 n.3 (1983), and deferred ruling on the motion until after the trial. The judge concluded after trial that the evidence of guilt was very substantial, "while not perhaps overwhelming," and that dismissal of the case was not warranted by the minor, and probably immaterial, flaw of the troopers' failure to tell the defendant of his right to an examination by a physician of his own choosing.

The judge pointed out in his discussion of the issue that the offer at the hospital of a blood alcohol content test was more than the defendant was entitled to. The judge concluded, however, that the offer made was not an offer of an examination by a physician of the defendant's choice and at the defendant's expense but rather a test initiated by whatever physician was on duty at the hospital's emergency room. The judge inferred, as he was justified in doing on the evidence, that the defendant, who was in consultation with his father, declined the blood test at the hospital and asked for a breathalyzer test because he believed that the passage of time would reduce the possibility of an inculpatory test result. The judge concluded that the failure to tell the defendant that he could have an examination by a physician of his choice and at his expense did not prejudice the defendant in any way because, if he had been so advised, he would not have changed his mind and had a blood test. The judge made no finding as to what the defendant would have done if he had been advised of his § 5A right not only to a blood test but also to an examination by a physician of his choice.

Section 5A does not state the consequences that should flow from a violation of its terms. See *Commonwealth* v. *Andrade, supra* at 877-878. Dismissal of the charges is inappropriate if the evidence against the defendant is overwhelming. *Id.* at 882.

The police fulfilled the basic objective of § 5A when they took the defendant to a hospital for a physical examination, which he had, and advised him of his right to have a blood alcohol content test performed at the hospital, which he de-

clined. The defendant was in a far better position than is a person who is booked in the middle of the night at a police station on the charge of operating a motor vehicle while under the influence of alcohol. Such a person is not entitled to a police-administered blood alcohol content test (*Commonwealth* v. *Alano*, 388 Mass. 871, 877 [1983]), nor is such a person entitled to active police assistance in obtaining such a test (*id.* at 879).

When the police transported the defendant to a hospital in the middle of the night for a medical examination and advised him of his right to have a blood alcohol content test by a neutral health care provider, in certain significant respects the police did more for the defendant than he was entitled to under § 5A. The task of obtaining such a test or a physician's examination seasonably in the middle of the night in rural western Massachusetts obviously would not be an easy one. The defendant received a medical examination although, to be sure, it was focused on his left knee. Two hospital personnel testified that he did not appear to be intoxicated. He elected in his own interest not to submit to a blood alcohol content test. We agree with the judge that the failure of the police, approximately four hours after the accident, to advise the defendant at the hospital that he was entitled to an examination by a physician of his own choice was inconsequential.[4] In view of our discussion, it is apparent that there is no merit to the defendant's constitutionally based claim that he was denied the right to present an effective defense. See *Commonwealth* v. *Alano, supra* at 876-877.

3. Each of the defendant's challenges to the judge's jury instructions lacks merit. Each of these challenges needs only

---

[4]Because § 5A requires oral (and written) notice at the time of booking, there was no statutory obligation to advise the defendant at the hospital of his § 5A rights. See *Commonwealth* v. *Marley*, 396 Mass. 433, 441 (1985). It would be better practice, however, to advise a person of his rights when taken to a hospital before booking. *Id.* at 441 n.9. Indeed, because the alcohol content of blood decreases with the passage of time, the possible unfairness in failing to advise a person at the hospital of his right to a timely examination is obvious. *Id.* at 445 (Liacos, J., concurring).

brief discussion. A judge need not give a charge in the form requested, and the judge has discretion generally not to advert to particular evidence or to discuss possible inferences. See *Commonwealth* v. *Roberts*, 378 Mass. 116, 130 (1979); *Commonwealth* v. *Benders*, 361 Mass. 704, 707 (1972); *Commonwealth* v. *Kelley*, 359 Mass. 77, 92 (1971).

a. The judge properly instructed the jury that the police were not obliged to conduct field sobriety tests at the time they arrested the defendant, but that the jury could consider the absence of such tests in deciding whether the defendant was under the influence of intoxicating liquor. The judge did not err in declining to express these principles in substantially similar language taken from the model jury instructions for use in the District Court.

b. The judge's charge concerning the impairment due to the consumption of alcohol that must be found to convict a defendant followed the standard prescribed by *Commonwealth* v. *Connolly*, 394 Mass. 169, 172-173 (1985). The judge was not obliged to tell the jury what factors to consider in deciding whether the defendant's consumption of alcohol diminished his ability to operate a motor vehicle safely.

c. Because there was no evidence of a test or analysis of the amount of alcohol in the defendant's blood, the judge correctly instructed the jury to ignore statutory standards for interpreting blood test results. The defendant's objection to the judge's characterization of the defendant's expert witness as a "so-called" expert is made for the first time on appeal. We see no error in the use of the words, as they appear in a cold transcript, particularly considering the judge's instructions as a whole concerning the jury's role in assessing the testimony of an expert witness.

d. The defendant argues that the judge should have told the jury, as requested, that, to convict the defendant, they must find that a reasonable person in the defendant's position would have foreseen that his actions could easily result in serious injury or death to someone like the victim. There was some evidence that the victim may have been operating a motorcycle without a headlight on the unlighted road. The

judge properly instructed the jury that the victim's negligence was not important to the case. He also told them what negligence was and that any negligent operation by the defendant had to be a proximate cause of the victim's death, adding that, if the victim's conduct was the sole cause of the injury, the defendant would have to be found not guilty. See *Commonwealth* v. *Campbell*, 394 Mass. 77, 87 (1985).

The judge's charge on negligence stated a standard of reasonableness that the jury were to apply. The reasonableness of the defendant's conduct depended in part on the reasonable foreseeability of the victim's conduct. This point was covered sufficiently by the judge's instruction on the defendant's duty of care.

e. The judge's instructions concerning the defendant's rights pursuant to G. L. c. 90, § 24 (1) (*e*) (1990 ed.), and G. L. c. 263, § 5A, followed the statutory provisions, and no error has been shown.

4. The order denying the defendant's motion for a new trial is affirmed. The defendant's conviction is affirmed.

*So ordered.*