COMMONWEALTH vs. JAMES L. MCINTYRE.

No. 92-P-1666.

Bristol. May 20, 1993. - March 8, 1994.

Present: ARMSTRONG, DREBEN, & SMITH, JJ.

*Motor Vehicle*, Homicide, Operating under the influence. *Homicide. Wanton or Reckless Conduct. Evidence*, Intoxication, Blood alcohol test, Right to obtain evidence.

At the trial of indictments, the Commonwealth presented sufficient evidence from which the jury could find beyond a reasonable doubt that the defendant operated his motor vehicle while under the influence of intoxicating liquor, recklessly and negligently, and by such operation caused serious bodily injury; further, the Commonwealth presented sufficient evidence to justify sending the indictment for involuntary manslaughter to the jury: the judge correctly denied the defendant's motions for required findings of not guilty. [198-199]

In a criminal case involving a charge of operating a motor vehicle while under the influence of alcohol, the failure of the police to notify the defendant in accordance with G. L. c. 263, § 5A, of his right to request an independent physical examination did not require dismissal of the charges or suppression of police testimony about whether the defendant was intoxicated, where the evidence at the hearing on the motions clearly established that the defendant was aware of his rights and had requested such an examination: the failure of the police was, in the unusual circumstances, "inconsequential." [202-203]

In a criminal case in which the defendant was arrested for operating a motor vehicle while under the influence of alcohol, there was no basis for the defendant's claim that the indictments should be dismissed or testimony about whether he was intoxicated suppressed by reason of the alleged failure by police to afford him a reasonable opportunity to obtain an independent physical examination pursuant to G. L. c. 263, § 5A, where the police had no duty to assist the defendant and where there was no evidence the police had hindered the defendant in his efforts to obtain an examination and blood alcohol test. [203-204]

INDICTMENTS found and returned in the Superior Court Department on April 12, 1989.

A motion to dismiss was heard by *Elizabeth J. Dolan*, J., and the cases were tried before her.

*Kenneth L. Sullivan* for the defendant.

*Elspeth B. Cypher*, Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was found guilty by a jury of manslaughter, motor vehicle homicide, and one count of an indictment charging him with operating a motor vehicle while under the influence of intoxicating liquor, recklessly and negligently, and by such operation causing serious bodily injury. He was found not guilty of a second count charging the same offense. All of the indictments[1] arose from an accident that occurred shortly after midnight on April 4, 1989. The judge later vacated the defendant's conviction on the motor vehicle homicide indictment and dismissed that charge.

On appeal, the defendant claims that the judge committed error in denying (1) his motion for required findings of not guilty, (2) his motion to dismiss the indictments or, in the alternative, to suppress certain evidence, and (3) his motion for a new trial.

1. *Denial of the defendant's motion for required findings of not guilty.* The defendant claims that the Commonwealth failed to present sufficient evidence in regard to the indictments charging manslaughter and operating a motor vehicle while under the influence of intoxicating liquor, recklessly

---

[1]The defendant was the subject of additional indictments charging him with (1) operating a motor vehicle while under the influence of intoxicating liquor, (2) operating negligently so as to endanger, (3) failure to stop after causing personal injury (three counts), and (4) failure to stop after causing property damage (three counts).

At the close of the Commonwealth's evidence and again at the close of all the evidence, the defendant filed motions for required findings of not guilty and for the dismissal of duplicative indictments. The judge allowed the motion for required findings of not guilty in regard to the indictments which charged the defendant with failure to stop after causing personal injury and failure to stop after causing property damage. The judge allowed the motion to dismiss as duplicative those indictments which charged the defendant with operating a motor vehicle while under the influence and operating a motor vehicle so as to endanger.

and negligently and by such operation causing serious bodily injury, and, therefore, that the judge committed error in denying his motion for required findings of not guilty.

"The standard which we apply in reviewing the propriety of the denial of a motion for a required finding of not guilty is 'whether the evidence, read in a light most favorable to the Commonwealth, was sufficient to satisfy a rational trier of fact of each element of the crime beyond a reasonable doubt.' " *Commonwealth* v. *Amado*, 387 Mass. 179, 186 (1982), quoting from *Commonwealth* v. *Basch*, 386 Mass. 620, 622 (1982), and cases cited. "We consider the evidence at the close of the Commonwealth's case and at the close of all the evidence to determine whether the motion should have been granted." *Commonwealth* v. *Marley*, 396 Mass. 433, 442 (1985).

We summarize the evidence introduced by the Commonwealth on its case in chief.[2] Just past midnight on April 4, 1989, the victim, Steven Martin, was driving his motor vehicle, a Datsun, north on route 152 in North Attleborough. Two friends of Martin were passengers in his automobile. It was a foggy night. Suddenly one of the passengers saw headlights coming across the road toward the Martin vehicle through the fog. He yelled, "Look out." Martin braked, but his vehicle was hit head-on by a Ford Bronco driven by the defendant. Martin died as a result of his injuries sustained in the collision. One of his passengers was confined to a hospital for ten days with a skull fracture, two sprained ankles, and an injury to his lower back; the other passenger suffered a bruised and chipped hip.

When the police arrived at the accident scene, they noticed that both vehicles that had been in the head-on collision were in the northbound lane. The defendant was not at the scene, and a police officer was dispatched to the defendant's home, which was located nearby. The officer was informed by the

---

[2]Additional facts will be related in part 2 of this opinion when we consider the defendant's claim that the police violated the provisions of G. L. c. 263, § 5A.

defendant's father that the Bronco belonged to his son, who had just arrived home and was upstairs.

After being called by his father, the defendant came downstairs, wearing pajama bottoms, a shirt and no shoes. Upon being questioned by the officer, the defendant responded that he had been in an accident and came home in order to call an ambulance. The defendant told the officer that the accident occurred when a vehicle had swerved into his lane and hit his vehicle head-on. The officer noticed that the defendant's voice sounded "thick" and that the defendant slurred his words. The officer also noticed that the defendant had a bloody nose, a cut lip and what appeared to be a fresh bruise over one eye. The defendant declined the officer's offer to take him to the hospital for medical treatment.

The defendant agreed to return to the accident scene with the officer. The defendant's father also drove to the accident scene. After the defendant entered the cruiser, the officer advised the defendant of his Miranda rights.

At the accident scene, the defendant informed a detective investigating the accident that he had gone to a bar in Providence, Rhode Island, at 9:00 P.M., drank two vodkas mixed with grapefruit juice, and left between 11:00 P.M. and 11:30 P.M. He dropped a friend off and then proceeded to North Attleborough by route 95. After leaving route 95, he drove south on route 152. As he was traveling south, a vehicle traveling north approached him in his lane. The defendant stated that he swerved to the opposite side of the road to avoid a collision. As he did so, however, the other vehicle swerved back into its proper lane and a head-on collision occurred. The defendant stated that he left his automobile and went to his house, which was near the scene of the accident, to call the fire or police department.

Upon hearing the defendant's story, the officer commented to him that there were no swerve marks coming from the southbound lane into the northbound lane but that there were straight skid marks, about thirty feet in length, left by the defendant's vehicle in the northbound lane up to the point of impact.

During the defendant's recitation, the detective observed that the defendant was unsteady on his feet, his eyes were red and glassy, and he had an odor of alcohol about him. Another officer asked the defendant if he would submit to field sobriety tests. The defendant agreed. As a result of the defendant's performance of the tests, the defendant was arrested for operating a motor vehicle while under the influence of liquor. As the defendant was being driven to the police station, he recited the alphabet over and over in a singsong manner, asking, "How's that? Is that a lot better?"

The police investigation continued at the accident scene. Two damaged telephone poles were observed two tenths of a mile from the scene of the collision. They were alongside the southbound lane, the same lane in which the defendant was traveling before the accident. The first telephone pole (approaching the accident scene from the north) was missing a piece about fourteen inches from the ground and appeared to have been scraped about four and one-half feet up the pole. It appeared to have been side-swiped. Tire tracks were visible on the grassy dirt area running from the first pole to the second pole. The second pole (132 feet from the first pole) was cracked in half, and a metal pole, attached to the wooden pole, was bent. A cracked Ford insignia from a vehicle's grille was discovered inside a hole in the pole. An examination of the defendant's grille showed that it was missing the Ford insignia. In addition, a piece of wood was wedged between the right front tire and the rim of the defendant's vehicle.

An accident reconstruction expert testified for the Commonwealth. In his opinion, the Martin vehicle had been traveling between twenty and forty miles per hour and the defendant's vehicle between forty-five to fifty-five miles per hour at the time of the collision. He also opined that the defendant's vehicle had been in the wrong lane for almost 100 feet before the collision and that the Martin vehicle was, at all times, in its proper lane. In the witness's opinion, the defendant's explanation of the accident — that he was in the southbound lane when he saw a vehicle in his lane which

caused him to turn left into the northbound lane just as the other vehicle did — was not possible as the operators of the vehicles would have been unable to see each other because one vehicle was traveling around a curve and the other vehicle was traveling up a hill.

At the close of the Commonwealth's evidence, there was sufficient evidence from which the jury could find beyond a reasonable doubt that the defendant operated his motor vehicle while under the influence of intoxicating liquor, recklessly and negligently, and by such operation caused serious bodily injury. The defendant admitted that prior to the accident he had consumed two drinks that contained alcohol. There was evidence that after consuming the alcoholic drinks, the defendant while operating his motor vehicle crashed into two telephone poles, crossed the center line of the road, and traveled between forty-five and fifty-five miles per hour in the wrong lane for at least 100 feet until he collided with the Martin vehicle, killing Martin and causing serious bodily injuries to at least one of the passengers. After the accident, he was unsteady on his feet, his eyes were red and glassy, he had an odor of alcohol about him, and he failed field sobriety tests.

The Commonwealth also presented sufficient evidence to justify sending the manslaughter indictment to the jury under the required finding standard. It was the Commonwealth's theory at trial that the defendant's actions constituted the crime of involuntary manslaughter. "Involuntary manslaughter is defined as an unlawful homicide unintentionally caused by an act that constitutes such a disregard of the probable harmful consequences to another as to amount to wanton or reckless conduct." *Commonwealth* v. *Jones*, 382 Mass. 387, 389-390 (1981). The jury could have concluded that the manner in which the defendant operated his motor vehicle after consuming alcoholic beverages, including its speed, the striking of the telephone poles, the failure to stop afterwards, the crossing of the center line of the road and continuing on for a distance before colliding with the victim's vehicle, constituted wanton or reckless conduct.

Because the defendant filed a motion for required findings of not guilty at the close of all the evidence, "[w]e consider the evidence at [that stage] to determine whether the Commonwealth's position as to proof had deteriorated since it had closed its case." *Commonwealth* v. *Basch*, 386 Mass. 620, 622 n.2 (1982).

The defendant introduced evidence, through his father, challenging the Commonwealth's position that the defendant was under the influence of liquor while he was operating his motor vehicle. Other witnesses testified that it was very foggy at the time of the accident. An accident reconstruction expert testified that, in his opinion, the accident happened in the manner described by the defendant.

Inasmuch as the weight and credibility of the evidence is "a matter wholly within the province of the jury," *Commonwealth* v. *Martino*, 412 Mass. 267, 272 (1992), "there was nothing compelling in this evidence which caused the prosecution's case to deteriorate." *Commonwealth* v. *Walker*, 401 Mass. 338, 343-344 (1987). The judge properly denied the defendant's renewed motion for required findings of not guilty filed at the close of all the evidence.[3]

2. *Denial of defendant's motion to dismiss the indictments.* General Laws c. 263, § 5A, as amended by St. 1983, c. 557, provides in part: "A person held in custody at a police station . . . charged with operating a motor vehicle while under the influence of intoxicating liquor, shall have the right, at his request and at his expense, to be examined immediately by a physician selected by him. The police official in charge of such station . . ., or his designee, shall in-

---

[3]The defendant filed a motion for a new trial on the ground that the guilty verdict on the manslaughter indictment was against the weight of the evidence. The judge denied the motion, and the defendant claims error.

A verdict that is against the "weight of the evidence" has been expressed as the verdict being "so far against the general current of the evidence that to allow the verdict[ ] to stand without retrial would invoke a serious risk of perpetrating an injustice . . . ." *Commonwealth* v. *Woods*, 382 Mass. 1, 7 (1980). A trial judge's decision to deny such a motion is within his or her discretion. *Id.* at 8. On this record, there was no abuse of the judge's discretion.

form him of such right immediately upon being booked, and shall afford him a reasonable opportunity to exercise it."

The defendant filed a motion to dismiss the indictments. In addition, the defendant later filed a motion to suppress any references by the police at the trial to the consumption of alcohol by the defendant and any testimony concerning the opinions the police may have had about whether the defendant was intoxicated. The basis of both motions was a claim that the police violated G. L. c. 263, § 5A, by failing to notify the defendant of his right to an independent examination by a physician at his own expense and also by denying him a reasonable opportunity to exercise that right. The judge held an evidentiary hearing on the defendant's motion to dismiss. After the hearing, the judge filed a memorandum of decision which contained her findings of fact and rulings of law. She denied the defendant's motion to dismiss in its entirety. Later, she incorporated the findings on the motion to dismiss in her denial of the motion to suppress. The defendant claims error.

We summarize the judge's findings of fact. Both the defendant and his father are attorneys. When the defendant was taken to the police station, his father followed in his own vehicle. At the station, the father identified himself as an attorney representing his son and was asked to wait about ten minutes while the booking procedure and paperwork were completed. Following the wait, the father was escorted to the cellblock area where he found the defendant and a police officer engaged in an argument.

The police had twice asked the defendant to take a breathalyzer test, but he refused. Instead, he requested a blood test to determine the amount of alcohol in his blood but was told by the officer that the police were not required to allow him to have a blood alcohol content test because he had refused to take the breathalyzer test.

The father interjected and stated that, pursuant to G. L. c. 263, § 5A, the defendant did have a right to a blood alcohol content test. After reading the text of G. L. c. 263, § 5A, which was posted on a wall in the station, the officer reversed

his position and agreed with the defendant's father.[4] The officer stated, however, that under the statute it was the defendant's responsibility to have a physician come to the police station in order to administer the test. Noting the virtual impossibility of obtaining the services of a physician who would come to the police station, the father requested that the police transport the defendant to a hospital which was four-tenths of a mile from the police station. The police reminded the defendant that he had declined medical treatment and repeated that the police had no obligation to take him to the hospital for a blood alcohol content test. Sometime after the defendant made his request, an officer, one Bennett, went to the hospital to check on the condition of the injured passengers. Although the police could have transported the defendant to the hospital at that time, they did not do so.

Approximately two hours after his arrest, the defendant was released on bail. He and his father drove directly to the emergency room of the hospital and requested a blood alcohol content test. They were informed by a physician that it

---

[4]The source of the officer's mistake probably came from a misunderstanding on his part of the different purposes of G. L. c. 90, § 24(1)(e), and G. L. c. 263, § 5A.

General Laws c. 90, § 24(1)(e), "does not confer a right to a chemical test, such as a breathalyzer, on one arrested for driving under the influence. Rather, it provides that, if the police administer a chemical test, the test [result] is not admissible [at trial] unless the defendant received the specified protections, including an opportunity to secure an independent test." *Commonwealth* v. *Alano*, 388 Mass. 871, 875 (1983). "[A] defendant is not entitled to an independent test under [G. L. c. 90, § 24(1)(e),] unless the police first administer one." *Ibid*.

Here, the defendant refused to take a police-administered breathalyzer test. Therefore, he was not entitled to an independent test under G. L. c. 90, § 24(1)(e).

However, under G. L. c. 263, § 5A, a person arrested for operating under the influence of intoxicating liquor has a right, at his own expense, to be examined by a physician selected by him, and that examination may include a chemical blood alcohol content test. *Commonwealth* v. *Alano*, *supra* at 875.

The right given to the defendant by G. L. c. 263, § 5A, is separate from G. L. c. 90, § 24(1)(e), and does not depend on the defendant's acceptance or rejection of a police-administered test.

was the policy of the hospital not to extract a suspect's blood for alcohol testing without a police officer present. The defendant telephoned the police station and was told by the officer in charge that he did not know if he could spare an officer at that time and that the defendant should call back. When he did, the defendant was informed that he was no longer in custody and that the police had decided not to get involved any further. The defendant and the father then drove home.

a. *Lack of notice to the defendant.* In order to comply with G. L. c. 263, § 5A, the police must notify the defendant of his right to request an independent physical examination at his own expense. *Commonwealth* v. *Andrade,* 389 Mass. 874, 876-877 (1983). Here, the judge found that the police did not advise the defendant of his right to such an independent examination. She ruled, however, that the action of the police was not deliberate or intentional misconduct but, rather, was an honest mistake about the application of the law which the police corrected when they reviewed the statute. Further, the judge concluded that the defendant was not prejudiced by the lack of notice because the defendant is an attorney and was aware of his right to an independent examination, as was his father acting as the defendant's attorney. The defendant, however, claims that his motion to dismiss the indictments should have been allowed because the law demands strict compliance with the notice requirement of G. L. c. 263, § 5A, and, therefore, once the judge ruled that there was a violation of G. L. c. 263, § 5A, she should have dismissed the indictments.

We agree with the defendant that "strict compliance with the requirements of G. L. c. 263, § 5A, should be the unaltered practice," *Commonwealth* v. *Gruska,* 30 Mass. App. Ct. 940, 942 (1991), unless exigent circumstances are present that might justify a police officer's failure to notify the defendant of his right to a physical examination. See *Commonwealth* v. *Andrade,* 389 Mass. at 879 (1983). Notice is important because, by enacting G. L. c. 263, § 5A, the Legislature "create[d] a right to obtain evidence that is available

for only a short period of time and also [sought] to protect this right by requiring that the defendant be informed of its existence." *Id.* at 881.

"[E]ach case must be considered on its own set of facts . . . ." *Commonwealth* v. *Andrade, supra* at 878. Here, the undisputed evidence shows that shortly after the defendant arrived at the police station, he requested an independent examination by a physician. This evidence clearly establishes that the defendant, perhaps because he was an attorney, was well aware of his rights pursuant to G. L. c. 263, § 5A. In the rather unusual circumstances of this case, "literal compliance would not have afforded the defendant notice beyond that required by the statute." *Commonwealth* v. *Gruska, supra* at 941. Therefore, we hold that the failure of the police to notify the defendant that he was entitled to an examination by a physician of his own choice was "inconsequential." *Commonwealth* v. *Ames,* 410 Mass. 603, 608 (1991). The violation did not require dismissal of the complaints. We hasten to add, however, that the police should comply with the statute, regardless of a defendant's profession or occupation.

b. *The defendant's attempt to obtain a G. L. c. 263, § 5A, examination.* The defendant claims that the police both failed to take any action to assist the defendant and hindered the defendant's efforts to obtain an independent examination pursuant to G. L. c. 263, § 5A. The judge rejected the defendant's claim. There was no error.

"General Laws c. 263, § 5A, requires that the police provide the defendant with 'a reasonable opportunity to exercise his right to an examination by a physician of his choice at his request and expense.'" *Commonwealth* v. *Lindner,* 395 Mass. 144, 146 (1985), quoting from *Commonwealth* v. *Alano,* 388 Mass. 871, 878 (1983). Under the statute, "the police must not prevent or hinder an individual's timely, reasonable attempts to obtain an independent examination, but they need not assist him." *Commonwealth* v. *Alano, supra* at 879. "[The] statute places primary responsibility for an inde-

pendent blood test in the hands of the defendant, not the police." *Commonwealth* v. *Lindner, supra* at 148.

The police were not required to "transport [the] defendant to [the hospital] to obtain an independent test . . . ." *Commonwealth* v. *Rosewarne*, 410 Mass. 53, 55 (1991). It follows that the police were also not obligated to go to a hospital or similar place at the defendant's request in order to assist him in obtaining an examination.

The fact that the hospital was nearby or that the police were available to transport the defendant to the hospital, or to go to the hospital at his request, is not relevant. It is clear that the police are not under any duty to assist a defendant in obtaining a physical examination or a blood alcohol content test. The proximity of a hospital to the place of custody or the availability of the police does not create a duty where none has existed. To hold otherwise would mean that those defendants arrested for operating under the influence who are brought to police stations on "slow" nights or who are brought to police stations located near hospitals would be entitled to more opportunities under G. L. c. 263, § 5A, than defendants who are arrested on "busy" nights or who are brought to police stations located some distance from a hospital. That, surely, was not the intent of the Legislature.

The hospital is a private institution, and the judge found that its policy of not taking blood from a defendant was entirely self-serving and established with the idea of keeping its staff, as much as possible, out of court. There was evidence to support that finding. There was no evidence that the hospital's policy was dictated or arranged by the police.

There were no errors in the denial of the motions.

*Judgments affirmed.*
*Order denying motion for*
*new trial affirmed.*