WYATT PETERSON[1] *vs.* CATHERINE L. FOLEY.

No. 09-P-990.

Norfolk. January 14, 2010. - August 12, 2010.

Present: McHUGH, GREEN, & FECTEAU, JJ.

*Evidence,* Expert opinion, Cumulative evidence. *Negligence,* Motor vehicle, Expert opinion. *Police Officer.*

At the trial of a civil action, the admission in evidence of a police officer's opinion testimony regarding the cause of an automobile accident was error, where the officer lacked the necessary qualifications to determine the speed of the vehicle from the aftermath of the accident, based on damage assessment or the distances traveled, and where the officer was not qualified to give an opinion based on that speed determination as to the cause of the accident, or whether a bald tire contributed to the accident [350-354]; moreover, the error injured the substantial rights of the plaintiff, where, given that the officer's testimony was not cumulative of other evidence, and touched the ultimate issue, it might well have tipped the balance in favor of the defendant [354-357].

CIVIL ACTION commenced in the Superior Court Department on March 17, 2005.

The case was tried before *Barbara A. Dortch-Okara,* J.

*Douglas C. DuFault, Jr.,* for the plaintiff.

*Stephen M.A. Woodworth* for the defendant.

FECTEAU, J. The plaintiff, Wyatt Peterson, appeals from a judgment after a Superior Court jury verdict in favor of the defendant, Catherine Foley. Peterson complained that Foley was negligent in the operation of her motor vehicle, causing him to sustain serious personal injuries. In particular, he alleged that Foley caused his single-vehicle accident on March 12, 2004, when, after stopping at a stop sign, she abruptly pulled out from a side street in front of him when it was not safe to do so. Peterson swerved to the right and was able to avoid colliding

---

[1]By his mother and next friend, Debra Peterson.

with Foley's automobile; however, he lost control of his vehicle and was ejected from the car when it hit a tree. On appeal, he complains that the trial judge committed prejudicial error by allowing opinion testimony of Officer Dolan, a police officer who responded to the accident and was called by Peterson as a witness, and by allowing the introduction of a photograph. We agree and reverse.

Before trial, Peterson filed two motions in limine regarding evidentiary issues he anticipated Foley would raise during Officer Dolan's cross-examination. First, he asked the judge to limit the officer's testimony to his observations at the scene of the accident. He argued that because Dolan was not trained as an expert in accident reconstruction, he should not be allowed to opine as to the cause of the accident or who was at fault. Peterson's second motion in limine sought to exclude a photograph of his vehicle that showed a bald front right tire and to prohibit the officer from testifying about the tire. The judge denied both of these motions. At trial, no ruling was sought or made that Dolan was qualified as an expert in accident reconstruction.[2] Dolan testified on cross-examination, over a "standing" objection by Peterson, "[t]hat a combination of speed, the wet roadway, the bald front tire, and inexperience was the cause of the accident."

Each party presented its own accident reconstruction expert. Peterson's expert opined that Foley took a left-hand turn into the lane in which Peterson was traveling; that Peterson was driving around forty miles per hour (the posted speed limit) and he had to swerve right to avoid colliding with Foley's car; and

---

[2]During the pre-impanelment, nonevidentiary hearing on the plaintiff's motions in limine, the parties did not present the officer's qualifications to the judge. The defense contended that while Dolan was "trained in investigating accident scenes," he was not qualified in accident reconstruction. Plaintiff's counsel did not take issue with this characterization. It appears that the judge's ruling, consistent with the plaintiff's position, was based in part on a belief that an opinion of the role of speed in an accident can be derived by an experienced officer looking at the damage to vehicles: "[P]rovided that the officer is not giving a specific speed, I don't think — he didn't reconstruct the accident. As far as I understood, [Officer Dolan] made his own observations based on his training and experience. If you can look at vehicles and make some estimation as to speed being involved, I think this officer can render that opinion. I think that's possible to do if it is that obvious looking at the vehicle. Certainly, he would have had experience in these matters. So I would allow that, but the officer may not give an estimate of speed."

that this evasive maneuver caused him to lose control of the car and hit a tree. Foley's expert testified that the accident was due to Peterson's inattention and excessive speed between fifty-eight to sixty-five miles per hour.

The jury returned a special verdict answering that both parties were negligent and caused the accident, but because their verdict found that Peterson was sixty-five percent responsible for the accident, judgment entered for Foley. See G. L. c. 231, § 85.

*Discussion.* "[T]he question of an expert's qualifications is for the trial judge, and his determination will be reversed only on an abuse of discretion or error as matter of law. . . . The criterion of the judge is whether the witness possesses sufficient skill, knowledge or experience in the field of his testimony that the jury may receive appreciable assistance from it." *McCarthy* v. *Litton Indus., Inc.,* 410 Mass. 15, 27 (1991), quoting from *Commonwealth* v. *Boyd,* 367 Mass. 169, 182 (1975).

The judge erred in allowing the officer to give his opinion regarding the cause of the accident. While it is "not necessary for the officer[] to be [an] accident reconstruction expert[] in order to testify" to his opinions about an accident, "the subject matter [must] be one about which special knowledge beyond that possessed by the average [juror] will aid the jury in their deliberations, and . . . a person possessing such knowledge [may] give opinions pertinent to the issues of the case founded upon facts which either are conceded or could warrantably be found upon other evidence." *Cronin* v. *McCarthy,* 22 Mass. App. Ct. 448, 449 (1986), quoting from *Lovasco* v. *Parkhurst Marine Ry.,* 322 Mass. 64, 67 (1947). Here, Officer Dolan did not have the necessary qualifications to determine the speed of a vehicle from the aftermath of an accident, based on damage assessment or distances traveled, nor was he qualified to give an opinion, based on that speed determination, as to the cause of this accident.

The parties agree that the cause of a motor vehicle accident is a matter wherein "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Mass. G. Evid. § 702 (2010). They contest whether there was a sufficient showing that Officer Dolan was "qualified as an expert by knowledge,

skill, experience, training, or education." *Ibid.* See *Commonwealth* v. *Richardson*, 423 Mass. 180, 183 (1996). At trial, Officer Dolan testified that he had worked as a police officer for twenty-two years, partly as a detective, and that he had taken basic police academy training, which he described as including "how to report to accidents" and "defensive tactic, driving, investigations"; lastly, he said that he had "responded" to "probably hundreds, if not thousands, of accidents." On redirect, the officer admitted that he had no training with respect to "accident reconstruction and giving times, distances, and space as it relates to speed and damage."

We recognize that, like many lay witnesses who directly observe a motor vehicle while it is moving, a police officer is likely to be qualified to offer an estimate of the speed of that vehicle. See *Commonwealth* v. *Charland*, 338 Mass. 742, 744 (1959). See also Mass. G. Evid. § 701. However, to determine a vehicle's speed based only on artifacts of the accident, including distances traveled by the vehicle (if such can be determined, for example, by marks in the road) or by damage to the vehicle or other factors, is precisely what accident reconstruction experts are called on to do.[3] "Estimating the speed of a vehicle by

---

[3]See, e.g., *Tokio Marine & Fire Ins. Co.* v. *Grove Mfg. Co.*, 958 F.2d 1169, 1173-1175 (1st Cir. 1992) (trial judge has discretion to gauge competence of expert and extent to which opinion would be helpful to a jury in an accident reconstruction context); *Jackson* v. *Anthony*, 282 Mass. 540, 543-544 (1933) (experienced auto repair workers allowed to give expert testimony as to manner of contact between two vehicles in accident because extensive structural and body damage caused by collision outside realm of typical juror's knowledge); *Lenehan* v. *Travers*, 288 Mass. 156, 158-160 (1934) (experienced mechanic with no qualifications as an engineer or with special study of physics was allowed to express an expert opinion as to speed of vehicle before impact); *Reardon* v. *Marston*, 310 Mass. 461, 465 (1941) (experienced brake tester for Registry of Motor Vehicles was allowed to testify as expert that defendant's brakes were not in working order based on examination of skid mark pictures); *Bernier* v. *Boston Edison Co.*, 380 Mass. 372, 383-384 (1980) (expert allowed to testify as to speed of vehicle and cause of outcome from collision); *Leibovich* v. *Antonellis*, 410 Mass. 568, 571-572 (1991) (police officer's experience and training qualified him as expert in accident reconstruction and allowed him to testify as to speed of defendant's vehicle); *Commonwealth* v. *Provost*, 12 Mass. App. Ct. 479, 484 (1981) (stating accident reconstruction often necessary to get the facts of certain serious accidents); *Commonwealth* v. *McIntyre*, 36 Mass. App. Ct. 193, 197-198 (1994) (testimony of accident reconstruction expert used to discredit defendant's statements about how accident occurred).

interpreting the remains of a collision was a matter on which the judge might in [her] discretion receive expert testimony (see *Jackson* v. *Anthony*, 282 Mass. 540, 544 [1933]), especially as eyewitness accounts were confused." *Bernier* v. *Boston Edison Co.*, 380 Mass. 372, 384 (1980). Such a reconstruction is based on several laws of physics governing motion, momentum, energy, and inertia. Accident reconstruction experts often utilize mathematical formulae derived from these physical laws that usually require the identification of certain measurable facts and landmarks at the accident scene required by the formulae: for example, the length, direction, and type of skidmarks. Other factors that often inform such an analysis consider measurable physical factors, such as the coefficient of friction and the weight of the vehicles, acting as forces on the vehicles to slow their motion or change their direction, and the strength and stiffness of the materials of which the vehicles are made that inform an analysis of depth of crush damages. See *Bernier*, *supra* ("[A]s an accomplished structural engineer, [the expert] had a familiarity with the characteristics of metals as well as of concrete, even though most of his work dealt with the latter. He was not experienced specifically in the analysis of automobile collisions, but had high qualifications as to impact analysis"). See also note 3, *supra*. Compare *Cronin* v. *McCarthy*, 22 Mass. App. Ct. 448 (1986) (police officer not trained as accident reconstruction expert was properly permitted to give opinion as to location of impact between two vehicles in northbound lane, based in part on "various specific measurements" and his observations of "scrape and gouge marks in the northbound side of the roadway as well as debris, such as pieces of wood, broken glass, radiator coolant, and metal"). Therefore, without Dolan having the proper qualifications, the judge erred in allowing him to opine about the cause of the accident, the speed of Peterson's automobile, and the effects of the bald tire.

We are particularly concerned that Dolan's ultimate conclusion as to the plaintiff's speed was based on information that we rely on experts to interpret and which Dolan did not have the qualifications to evaluate. Specifically, Dolan's opinion that the plaintiff was traveling too fast was "[b]ased on the distance traveled, the impact with the tree, and the distance that the car

spun away from it," factors that Dolan had specifically excluded from his experience and training. Dolan also opined that "[b]ased on the above interview [see note 7, *infra*] and the extensive amount of damage to the car, Mr. Peterson was traveling south on Washington Street at a speed greater than reasonable and proper for the road conditions. He swerved to the right to avoid hitting the Foley vehicle and went into the shoulder of the road. Upon trying to recover and put the car back on the roadway, the car started to slide sideways." With that information, Dolan concluded "[t]hat a combination of speed, the wet roadway, the bald front tire, and inexperience was the cause of the accident." There is no basis on which one can conclude that the officer had sufficient education, training, or experience to perform the calculations or examination of the artifacts of the accident necessary to arrive at opinions sufficiently reliable to warrant their admission into evidence.

With respect to the bald front right tire, the officer concluded that it contributed to the accident; however, he did not explain the basis of this conclusion. Although both experts had access to the photograph showing the bald tire and reviewed all the evidence with respect to the accident, we note that neither of them mentioned the bald tire. Neither expert testified that the tire contributed to the accident, nor did either expert testify about how the bald tire could have affected the plaintiff's control of the car.

Furthermore, there was no evidence from any source that the plaintiff had used his brakes to avoid the collision or to attempt to regain control of the car. The evidence is uniform that the plaintiff's first evasive maneuver was to steer the car right, where the right tires traveled on the soft shoulder of the road for approximately fifty yards. The plaintiff then steered the vehicle back onto the roadway for a short distance before going into a spin and colliding sideways into a tree on the right side of the road. We think it significant that no witness explained or discussed the effects of tires with or without tread with respect to these events.

The defendant suggests that the average juror would have been able to rely on common knowledge and experience to infer a causal connection between a bald tire and a motor vehicle accident and that this would permit the jury to conclude that the

bald tire could affect a car's steering and braking ability. That jurors may understand, on a theoretical basis, that one should not drive on bald tires does not mean that jurors may determine, based upon common knowledge and experience, whether a front bald tire was a contributing factor to this accident. If that were true, then Dolan's opinion testimony on this point would be unnecessary.[4] However, his opinion that the bald tire (and speed) contributed to this accident was made on insufficient qualifications, without a basis in fact, and is merely an opinion, ipse dixit. As observed in a slightly different context, "nothing in either *Daubert* [v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993),] or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Canavan's Case*, 432 Mass. 304, 315 (2000), quoting from *General Elec. Co.* v. *Joiner*, 522 U.S. 136, 146 (1997).

Having determined error, the next step in our analysis is to determine "whether the [plaintiff] has made a 'plausible showing that the trier of fact might have reached a different result if the evidence had [not] been before it.' " *Grant* v. *Lewis/Boyle, Inc.*, 408 Mass. 269, 275 (1990), quoting from *DeJesus* v. *Yogel*, 404 Mass. 44, 48-49 (1989). While not conceding error, Foley contends that if the testimony and photograph were wrongly admitted into evidence, it was not reversible, harmful error under the provisions of G. L. c. 231, § 119,[5] and Mass.R.Civ.P. 61, 365 Mass. 829 (1974),[6] because the evidence did not injure the substantial rights of the plaintiff. Specifically, Foley contends

---

[4]Conversely, to the extent that expert testimony on the subject was necessary or appropriate, it should have been presented through an expert qualified to give it. In that context, the omission of any discussion of the bald tire by both reconstruction experts is significant.

[5]General Laws c. 231, § 119, inserted by St. 1973, c. 1114, § 202, states: "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or anything done or omitted by the trial court or by any of the parties is ground for modifying or otherwise disturbing a judgment or order unless the appeals court or the supreme judicial court deems that the error complained of has injuriously affected the substantial rights of the parties. If either court finds that the error complained of affects only one or some of the issues or parties involved it may affirm the judgment as to those issues or parties unaffected and may modify or reverse the judgment as to those affected."

[6]Rule 61 states: "No error in either the admission or the exclusion of

that there was overwhelming evidence showing Peterson was speeding and that the officer's testimony was cumulative of such evidence at trial. We disagree.

First, the officer's testimony added opinion evidence above and beyond that provided by the two experts, so that his opinion about the cause of the accident was not just cumulative of other evidence presented at trial. The defendant's contention that the officer's opinion about the plaintiff's speed was cumulative refers to an admission to Officer Dolan by the plaintiff[7] and to the defense expert's opinion of the plaintiff's speed. While

evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

[7]Defense counsel started this line of questioning by asking Officer Dolan about his visit to the plaintiff at the hospital:

> *Q.:* "And at that time did you talk to him and ask him about how the accident happened?"
>
> *A.:* "Yes."
>
> *Q.:* "And at that time, sir, what did you say to him, and what did he say to you?"
>
> *A.:* "He stated that he didn't remember much about the accident, other than he and his friends went to the music store in Walpole Center and that he believed he swerved to the right to avoid something, but he had trouble remembering the details.
>
> "I asked him if he remembered how fast he was going, and he stated that he believed he may have been going 45.
>
> "I explained to him the speed limit in that area was posted at 40 miles per hour, and with the weather conditions he should have been going slower than 40. I also explained with the amount of damage to the car that I felt he may have been traveling faster than 45."
>
> *Q.:* "I think your last statement was: I also explained to him that with the amount of the damage to the car that I felt he may have been traveling faster than 45 miles per hour. Is that what you stated in your report?"
>
> *A.:* "That's correct."
>
> *Q.:* "Why did you say that, sir, as far as the damage to the car? What led you to that conclusion?"

Dolan's testimony may have reiterated a similar conclusion to that of the defense expert, Dolan's testimony of how he derived his opinion of the plaintiff's speed as a contributing cause of the accident was different in kind from that of the defense expert; thus it was not cumulative of that evidence and likely contributed to a tipping of the balance in favor of the defendant. Regarding the plaintiff's admission, Dolan testified that he had visited the plaintiff at the hospital and that the plaintiff had admitted that he may have been going forty-five miles per hour. Dolan testified that after he told the plaintiff of the forty miles per hour posted speed limit, Dolan stated, in a manner suggestive more of speculation than opinion, that "I also explained with the amount of damage to the car that I felt he may have been traveling faster than [forty-five miles her hour]."[8]

Finally, it was significant error to permit Officer Dolan to give an opinion of fault, as it touched the ultimate issue that was within the exclusive province of the jury. "An expert witness may give testimony 'on matters within the witness's field of expertise [and this testimony] is admissible whenever it will aid the jury in reaching a decision, even if the expert's opinion touches on the ultimate issues that the jury must decide.' " *Puopolo* v. *Honda Motor Co.*, 41 Mass. App. Ct. 96, 98 (1996), quoting from *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982). See *Welch* v. *Keene Corp.*, 31 Mass. App. Ct. 157, 164-165 & nn. 9-10 (1991) (simply because a witness's testimony goes to the "ultimate issue" of the case does not make it inadmissible). "Generally, however, an expert should not testify to whether a defendant was

---

*A.*: "Based on the distance traveled, the impact with the tree, and the distance that the car spun away from it."

*Q.*: "And did you form a conclusion in your report as to Mr. Peterson's speed at the time?"

*A.*: "Yes."

*Q.*: "And what conclusion did you come to in that regard, sir?"

PLAINTIFF'S COUNSEL: "Objection."

COURT: "Overruled."

*A.*: "That it was improper for the conditions."

[8]See note 2, *supra*, relative to the judge's order that Dolan not give an estimate of a specific speed.

negligent or to other such matters which 'touch[ ] on reasonable care, an issue properly left for the jury.' " *Puopolo, supra,* quoting from *Welch* v. *Keene Corp., supra* at 165 n.10. The implication of Dolan's statement that the defendant was not at fault was that the plaintiff was at fault,[9] especially considering the officer's opinions given moments before about the plaintiff's inexperience, speed, and the bald front tire as factors contributing to the accident — opinions that he had derived, in part, from observations of the accident's aftermath, which he was not qualified to interpret.

Dolan's opinion testimony might well have been the factor that tipped the balance in favor of the defendant because the jury's likely perception of his roles as both an authoritative governmental figure and a neutral investigator could serve to elevate his opinions and distance him from the parties, unlike their retained expert witnesses who could not have the benefit of either perception. Given the percentages of fault attributed to the parties by the jury (sixty-five percent to the plaintiff and thirty-five percent to the defendant) and considering the relatively small degree those percentages would have to shift in order to change the outcome (fifteen percent in the plaintiff's favor, see G. L. c. 231, § 85), we determine that the prejudicial effect of these balance-tipping factors was significant. This, in our view, constitutes an injury to the substantial rights of the plaintiff necessitating a new trial.

> *Judgment vacated.*
>
> *Verdict set aside.*

---

[9] Officer Dolan testified that "[n]owhere in [his] report [did he] come to the conclusion that [Foley] was at fault in this accident."