NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-675

DEPARTMENT OF STATE POLICE

vs.

MIKHAEL H. EL-BAYEH.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a de novo hearing, a judge of the District Court found the defendant, Mikhael El-Bayeh, responsible for the civil motor vehicle infraction of speeding, G. L. c. 90, § 17.  El-Bayeh appealed to the Appellate Division, which affirmed the District Court judge's finding of responsibility.  El-Bayeh now appeals, arguing, among other things, that (1) the de novo hearing judge (hearing judge) erred by denying El-Bayeh's motion to dismiss the speeding citation and (2) the motion judge (motion judge) erred by denying El-Bayeh's motion to permit inspection of written documents and materials in possession of the Department of State Police (department) that he argues were essential to his defense.  We reverse the decision and order of

the Appellate Division and remand for entry of an order vacating the District Court's finding of responsibility.

Background.  1.  Procedural history.  On August 4, 2021, a State trooper issued El-Bayeh a citation for speeding, which El-Bayeh appealed to a clerk-magistrate of the District Court.  The clerk-magistrate found El-Bayeh responsible for the infraction.  El-Bayeh then requested a de novo appeal to a judge of the District Court.

Prior to the hearing, El-Bayeh moved for, among other things, discovery.  His motion was denied.  We reserve for later discussion the discovery El-Bayeh sought.  Following the de novo hearing, the hearing judge found El-Beyah responsible.  El-Bayeh then appealed to the Appellate Division, which affirmed the finding of responsibility.

2.  Statement of facts.  We summarize the evidence presented at the de novo hearing at which State Trooper Michael Sierra testified and El-Bayeh, who represented himself, presented his case.  On August 4, 2021, at approximately 6:30 $\underline{P}.\underline{M}.$, the trooper was parked in the ramp area connecting Interstate Highway 95 and Route 3 in Burlington.  It was slightly raining and cloudy, and the "roadways were slightly damp."  The trooper heard an "engine sounded to be at full throttle," and when he looked up, he saw a gray Subaru Forester

2

"flying past" him at the top of the ramp. The trooper visually estimated that the vehicle was traveling fifty miles per hour and accelerating, whereas other cars on the ramp were traveling at roughly thirty miles per hour. As the Forester accelerated past the trooper, he retrieved his light detection and ranging (LIDAR)[1] device. The trooper visually estimated that the Forester was by then traveling at seventy-five miles per hour, and the LIDAR device measured a speed of seventy-two miles per hour. The vehicle was traveling in a zone with a posted speed limit of fifty-five miles per hour. The trooper stopped the vehicle, identified the operator as El-Bayeh, and issued a citation.

During the hearing, El-Bayeh objected to the introduction of LIDAR evidence, and he cross-examined the trooper about how the trooper visually estimated the speed of El-Bayeh's vehicle. During the trooper's testimony, El-Bayeh moved to dismiss on the grounds that the citation was not entered into evidence. The hearing judge denied the motion to dismiss, found El-Bayeh responsible, and imposed a fine of $105. El-Bayeh appealed to

---

[1] "'Lidar,' a portmanteau of 'light' and 'radar,' refers to '[a]n optical sensing technology used to determine the position, velocity, or other characteristics of distant objects by analysis of pulsed laser light reflected from their surfaces'" (citation omitted). Commonwealth v. Crowder, 495 Mass. 552, 554 n.3 (2025).

the Appellate Division, which affirmed the de novo judge's finding of responsibility.

Discussion. 1. Motion to dismiss. El-Bayeh asserts that the hearing judge erred in denying his motion to dismiss because the trooper did not introduce a copy of the traffic citation into evidence and, therefore, the department did not show probable cause that he was speeding, and the department did not satisfy the "no-fix" law, G. L. c. 90C, § 2. We disagree.

First, because the trooper testified that he observed El-Bayeh speeding, the trooper had probable cause to believe that El-Bayeh committed a civil motor vehicle infraction. See Commonwealth v. Lobo, 82 Mass. App. Ct. 803, 808-809 (2012) (trooper's "immediate observation that none of [a vehicle's] occupants was wearing a seat belt provided a basis to cite . . . all the vehicle's occupants . . . for a seat belt law violation"); Commonwealth v. Zimmermann, 70 Mass. App. Ct. 357, 359 (2007) (trooper's visual observations provided probable cause that defendant was operating his motor vehicle at rate of speed that was greater than reasonable or prudent).

Second, we discern no error in the hearing judge's conclusion that the department complied with G. L. c. 90C, § 2, the "no fix" statute, which generally requires a law enforcement officer "to give a copy of the [traffic] citation to the

4

violator at the time and place of the violation."  Id.  Here,

the trooper testified that he gave a paper citation to El-Bayeh

during the traffic stop.  Contrast Commonwealth v. Carapellucci,

429 Mass. 579, 581 (1999) (complaint dismissed pursuant to G. L.

c. 90C, § 2, where Commonwealth conceded that no copy of motor

vehicle citation was ever mailed or delivered to defendant).  We

are not persuaded by El-Bayeh's argument that the best evidence

rule required a copy of the citation to be introduced into

evidence because the rules of evidence do not apply at hearings

on civil motor vehicle infractions.[2]  Rule VII(b)(1) of the Trial

Court Rules, Uniform Rules on Civil Motor Vehicle Infractions

(1986).  Thus, the hearing judge did not err in denying El-

Bayeh's motion to dismiss.[3]

---

[2] Even if the rules of evidence did apply at the de novo
hearing, the best evidence rule was inapplicable because the
purpose of the trooper's testimony on this issue was not to
prove the contents of the citation; it was to prove that he gave
the citation to El-Bayeh.  See Commonwealth v. Balukonis, 357
Mass. 721, 725 (1970) ("The best evidence rule is applicable to
only those situations where the contents of a writing are sought
to be proved").

[3] We also reject El-Bayeh's argument that Trial Court Rule
VII(d)(2) required the de novo judge to review a copy of the
citation to find probable cause.  See rule VII(d)(2) of the
Trial Court Rules, Uniform Rules on Civil Motor Vehicle
Infractions ("Upon receipt of a claim of appeal, the clerk shall
promptly transmit a copy of it, together with copies of all
papers in the case then on file, including the citation, front
and back, to the appropriate Appellate Division").  On its face,
rule VII(d)(2) governs the transmission of materials to the
Appellate Division and does not prescribe what evidence must be

2. _Motion for discovery_. Prior to the hearing on the de novo appeal, El-Bayeh filed a motion "to permit inspection of written documents, materials, and/or potentially exculpatory evidence." El-Bayeh requested to inspect (1) the LIDAR unit used by the trooper to measure the speed of El-Bayeh's vehicle; (2) the LIDAR unit's storage area; (3) the user manual for the LIDAR unit; and (4) the site where the LIDAR unit was last tested by the trooper before issuing the speeding citation at issue -- in this case, the trooper's backyard. The department opposed the motion, arguing that El-Bayeh failed to establish that the requested materials were relevant to demonstrate that the LIDAR device was inaccurate or defective. Following a hearing on El-Bayeh's motion, the motion judge denied the motion "for the reasons set forth in the Department of State Police's opposition."

El-Bayeh is correct that pursuant to G. L. c. 90C, § 3 (A) (4), fifth par., he is entitled to at least some

---

presented to a judge conducting a de novo hearing in the District Court. Though it would have been the better practice for the department to introduce a copy of the citation into the record, this administrative rule does not set an evidentiary requirement. The hearing judge could conclude from the trooper's testimony alone that there was probable cause to issue a speeding citation to El-Bayeh. See rule VII(b)(1) of the Trial Court Rules, Uniform Rules on Civil Motor Vehicle Infractions (at hearings on civil motor vehicle infractions, "[t]he evidence shall be given such weight as the judge or clerk-magistrate deems appropriate").

discovery, however, that determination is left to the motion judge in the first instance. The statute provides that "[o]n a showing of need in advance of [a civil motor vehicle infraction] hearing, the magistrate or justice may direct that the violator be permitted to inspect specific written documents or materials in the possession of the police officer or agency concerned that are essential to the violator's defense." G. L. c. 90C, § 3 (A) (4), fifth par. Fundamentally, while the rules of evidence do not apply at hearings on civil motor vehicle infractions, the judge or clerk-magistrate must preserve the alleged violator's right to a fair hearing. See Commonwealth v. Mongardi, 26 Mass. App. Ct. 5, 9 (1988) ("the procedure with respect to civil motor vehicle infractions authorized by [G. L.] c. 90C, §§ 1-3, . . . seeks to attain prompt compliance with government regulations while preserving the right to a fair hearing").[4]

Given that the department intended to -- and ultimately did -- rely in part on LIDAR evidence to prove that El-Bayeh had been speeding, written documents and materials relevant to the reliability of the LIDAR unit were "essential" to his defense.

---

[4] After Mongardi, the Legislature rewrote c. 90C, § 3, to expressly allow for discovery in advance of hearings on civil motor vehicle infractions. G. L. c. 90C, § 3, as amended through St. 1991, c. 138, § 161.

G. L. c. 90C, § 3 (A) (4), fifth par.  El-Bayeh argued in his motion that inspection of the LIDAR unit user manual could help him cross-examine the trooper about whether the device was properly stored and calibrated on the day of the incident. Moreover, while the department did not object to this request it did not provide the user manual.  Similarly, records of the calibration of the unit are essential to determine whether the unit was properly calibrated.  Where production of this discovery could have assisted El-Bayeh in challenging the admissibility of the LIDAR reading or in cross-examining the trooper, and where such production would not have unduly burdened the department, it was an abuse of discretion for the motion judge not to allow this discovery.[5]

As for El-Bayeh's requests to inspect the LIDAR unit, the storage area, and the testing site, those requests must be evaluated in light of any written discovery that is ordered consistent with this memorandum and order.  In that context, the motion judge will be better equipped to evaluate and balance the parties' competing interests and whether such discovery is

_____

[5] While the trooper did bring the State police LIDAR guide with him to the hearing and the hearing judge offered to pause the hearing to allow El-Bayeh time to inspect it, he maintained his objection because this did not allow him to prepare before the hearing.

8

essential to El-Bayeh's defense.  Here, El-Bayeh argued in his motion that inspection of the LIDAR unit would allow him to verify the existence and condition of the unit; inspection of the storage area would allow him to confirm if the device was properly stored according to the user manual; and inspection of the testing site, which was at the trooper's home, would allow El-Bayeh to examine if the site complied with the unit's pre-operational testing requirements.[6]

Simply put, El-Bayeh must be provided sufficient discovery to challenge the accuracy of the LIDAR unit.[7]  Commonwealth v. Whynaught, 377 Mass. 14, 18 (1979) ("most courts have agreed that the admission of radar evidence is conditioned on a demonstration to the court of the accuracy of the radar apparatus").  It also might be that after receiving the written discovery, El-Bayeh may no longer need the additional discovery,

---

[6] For example, the hearing judge should factor in that El-Bayeh has independently learned and confirmed the trooper's home address so the confidentiality of that information is no longer at issue.

[7] Of course, if the department elects to proceed without the use of LIDAR evidence, this discovery will not be necessary. "[L]ike many lay witnesses who directly observe a motor vehicle while it is moving, a police officer is likely to be qualified to offer an estimate of the speed of that vehicle." Peterson v. Foley, 77 Mass. App. Ct. 348, 351 (2010).  We express no opinion on the sufficiency of the non-LIDAR evidence to support a finding of responsibility.

or that his interests may be served by examining photographs of the LIDAR unit, where it was stored, and where it was calibrated.

Conclusion.  Because the hearing judge may have relied upon LIDAR evidence in finding El-Bayeh responsible,[8] we are constrained to reverse the decision and order of the Appellate Division and remand to the Appellate Division for entry of an order vacating the District Court's finding of responsibility.[9]

So ordered.

By the Court (Rubin, Henry & Wood, JJ.[10]),

Clerk

Entered:  March 27, 2026.

---

[8] Given our disposition, we need not reach the issue of whether the evidence obtained from the LIDAR device was admissible.  We also decline to reach the issue because the evidence may differ at any hearing after remand.

[9] El-Bayeh's request for a refund of his filing fees pursuant to G. L. c. 90C, § 3 (A) (4), first par., is denied. That provision allows a refund when the disposition on appeal results in a finding of not responsible, which has not occurred here.

[10] The panelists are listed in order of seniority.