COMMONWEALTH *vs.* MICHAEL FALCO.[1]

No. 95-P-1829.

Berkshire. March 10, 1997. - July 30, 1997.

Present: PERRETTA, LAURENCE, & LENK, JJ.

*Bail. Intoxication. Evidence,* Right to obtain evidence, Intoxication.

Where a clerk-magistrate declined on policy grounds to conduct a bail hearing
    until 8 A.M., upon learning that the defendant, who was arrested at about 2
    A.M. for operating a motor vehicle under the influence of alcohol, had
    declined to take a breathalyzer test, there was no violation of the
    defendant's right to a prompt bail hearing [255-256] or right to an
    independent medical examination [256], in circumstances in which the
    defendant declined to make a telephone call and did not request an
    independent medical examination, after being informed of his rights.

COMPLAINT received and sworn to in the Pittsfield Division of
the District Court Department on October 25, 1993.

A motion to dismiss was heard by *James B. McElroy*, J., and
a motion to reconsider was heard by him.

*Eric Neyman*, Assistant District Attorney, for the Com-
monwealth.

*Lori H. Levinson* for the defendant.

LENK, J. The Commonwealth appeals from the allowance of
the defendant's motion to dismiss the complaint charging him
with operating while under the influence of intoxicating liquor,
second offense (OUI), G. L. c. 90, § 24. After an evidentiary
hearing, the motion judge determined that the failure of the
clerk-magistrate to conduct a prompt bail hearing upon learning
that the defendant had refused a breathalyzer test deprived the
defendant of the opportunity to prepare a defense pursuant to
G. L. c. 263, § 5A. Absent collateral overwhelming evidence of

---

[1]This case was originally decided by memorandum and order on June 9,
1997, under rule 1:28 of the Appeals Court. Our opinion closely tracks that
original rule 1:28 memorandum and order.

intoxication, the judge concluded that dismissal of the complaint was appropriate. We reverse.

The pertinent facts as found by the judge, supplemented as necessary by the uncontroverted evidence, are these. At approximately 2 A.M. on October 23, 1993, Trooper Brown of the Massachusetts State police observed a white vehicle leave the area of a local bar at a speed which he believed to be greater than the posted limit. Trooper Brown observed the same vehicle swerve to avoid two parked cars, drive onto a lawn adjacent to the road and then back up into a driveway on the property. Trooper Brown stopped the vehicle and, upon inquiry, learned that the driver was the defendant. The defendant told Trooper Brown that the property where he stopped was not his residence and that he was lost.

Standing within two feet of the defendant, Trooper Brown detected the smell of alcohol on the defendant's breath, noticed that the defendant's eyes appeared glassy and red and that his speech was slurred but understandable. Trooper Brown asked the defendant if he had been drinking, to which the defendant replied that he had. Trooper Brown then administered four field sobriety tests to the defendant: the one-legged stand; the heel-toe-turn; the alphabet recital; and the finger to nose test. As a result of his observations, and the defendant's performance on the field sobriety tests, Trooper Brown arrested the defendant for operating while under the influence and brought him to the Cheshire State police barracks for booking.

The defendant was booked at 2:26 A.M. and informed of his Miranda rights as well as his right to a breathalyzer test, G. L. c. 90, § 24(1)(*e*), to an independent medical examination, G. L. c. 263, § 5A, and to make a telephone call, G. L. c. 276, § 33A. The defendant declined to take a breathalyzer test and did not avail himself of the opportunity either to make a telephone call or to have an independent medical examination. He was cooperative at all relevant times and did not appear confused or incapable of following instructions.

At 2:30 A.M. Trooper Brown called the clerk-magistrate to arrange a bail hearing for the defendant. Without speaking to the defendant, the clerk-magistrate refused to consider bail upon learning from Trooper Brown that the defendant had declined the breathalyzer test and appeared to be "under the influence." The clerk-magistrate ordered the defendant held until 8 A.M., all pursuant to the clerk-magistrate's policy to hold until morning

all OUI arrestees who refused a breathalyzer test. While imputing no bad faith to the clerk-magistrate, the judge found the policy "arbitrary, lumping all 'refusals' into a non-bailable category without any independent, personal corroboration of an arrestee's state of sobriety." He concluded that the failure to conduct a bail hearing deprived the defendant of his rights under G. L. c. 263, § 5A.

On appeal, the Commonwealth contends that it was error to dismiss the complaint since neither the defendant's right to prompt bail nor his right to an independent medical examination were violated and, even if such rights were violated, the drastic remedy of dismissal was unwarranted.

1. *Bail.* Neither the Federal or State Constitution, the bail statute, G. L. c. 276, §§ 57-58, Rule 14 of the Rules Governing Persons Authorized to Take Bail (1996), nor our case law establishes a fixed time period within which a bail hearing must be held. In *Commonwealth* v. *Chistolini*, 422 Mass. 854, 856 (1996), however, the Supreme Judicial Court interpreted the bright line six-hour limit on police questioning, see *Commonwealth* v. *Rosario*, 422 Mass. 48, 56 (1996), as suggestive of the permissible outer limit of confinement prior to a bail hearing. In *Chistolini*, the defendant obtained his release six hours and six minutes after his arrest because of a Westfield police policy to contact the bail commissioner only at set four hour intervals when court is not in session. 422 Mass. at 855-856. The court held that the six-hour confinement did not violate the defendant's rights conferred by the bail statute "[c]onsidering the fact that Chistolini was given the right to make a telephone call and chose not to call a lawyer or a bail magistrate." *Id.* at 856-857. The court concluded that the police did not interfere with the defendant's right to a more prompt bail hearing. *Ibid.*

Here, too, the defendant was held at the police station from approximately 2:26 A.M. until 8:50 A.M., just under six and one-half hours, the delay resulting in large part from a policy decision. As in *Chistolini*, the defendant was informed of his right to make a telephone call and elected not to do so. "We evaluate the lawfulness of any delay in bringing a defendant to court for his initial appearance by considering the reasonableness of the delay in light of the circumstances." *Commonwealth* v. *Perito*, 417 Mass. 674, 680 (1994). To be sure, it is much to be preferred that a clerk-magistrate's decision to delay a bail hear-

ing be made on a case-by-case basis and after first-hand observation. See *Commonwealth* v. *Finelli*, 422 Mass. 860, 863 (1996). However, where the defendant's confinement was just under six and one-half hours and the defendant chose not to exercise his right to make a telephone call to contact a lawyer or to inform the police of his desire for an independent medical examination necessitating earlier release from custody, we are constrained to conclude in these particular circumstances that there was no violation of the defendant's statutory right to a prompt bail hearing.

2. *Independent medical examination.* In order to exercise the right to an independent medical examination, an arrestee must ordinarily travel to a medical facility. *Finelli*, 422 Mass. at 861. See *Commonwealth* v. *Ames*, 410 Mass. 603, 608 (1991). Hence the right to a prompt bail hearing — the method of obtaining release from custody in order to travel to the medical facility — intersects with G. L. c. 263, § 5A, rights. *Finelli, supra* at 861. Section 5A, however, demands some affirmative assertion of the right from the arrestee, and the onus to arrange for the independent testing rests squarely upon the arrestee. *Commonwealth* v. *Lindner*, 395 Mass. 144, 148 (1985).

Here, the defendant did not request an independent medical examination either before or after learning of the clerk-magistrate's decision to hold him until morning. The police had properly notified him of this right and did nothing to frustrate or obstruct his exercise of it. Because he chose not to avail himself of an independent medical examination, the clerk-magistrate's policy-based decision to delay the bail hearing also cannot reasonably be seen as having frustrated or obstructed this defendant's exercise of an unclaimed and unpreserved right. "[F]or the intersection of medical examination and bail rights to occur, [the defendant] must have properly preserved his § 5A rights. He did not do so, for he did not request an independent examination, as the statute requires." *Chistolini*, 422 Mass. at 858. No violation of the defendant's § 5A rights occurred.

In view of the foregoing, we conclude that it was error to dismiss the complaint. The order allowing the motion to dismiss is reversed.

*So ordered.*