## COMMONWEALTH vs. TYSON KING.

Berkshire. February 1, 1999. - March 4, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Bail. Intoxication. Evidence,* Right to obtain evidence, Intoxication. *Constitutional Law,* Right to obtain evidence. *Motor Vehicle,* Operating under the influence. *Alcoholic Liquors,* Motor vehicle. *Practice, Criminal,* Dismissal.

Discussion of the intersection of G. L. c. 276, § 58, under which an accused has the right to a prompt bail hearing after arrest, and G. L. c. 263, § 5A, under which an accused has the right to an immediate independent medical examination when charged with operating a motor vehicle while under the influence of intoxicating liquor. [172-173]

There was no permissible public safety ground for a bail magistrate's refusal, for over seven hours, to conduct a bail hearing for a person held at a police station under arrest for operating a motor vehicle while under the influence of liquor, where there was no basis for concluding that the person was too intoxicated to understand the nature of the bail proceedings. [174-175]

A bail magistrate's refusal to conduct a prompt bail hearing for a person under arrest for operating a motor vehicle while under the influence of intoxicating liquor violated the accused's rights under G. L. c. 276, § 58, which, in turn, frustrated the accused's right under G. L. c. 263, § 5A, to the independent medical examination that he had requested. [175-176]

This court stated that, in circumstances in which a person accused of operating a motor vehicle while under the influence of intoxicating liquor asserts his right under G. L. c. 263, § 5A, to an independent medical examination, the bail hearing mandated by G. L. c. 276, § 58, must be held as promptly as possible. [176-177]

Discussion of the appropriate remedy for a violation of a defendant's right under G. L. c. 263, § 5A, to an independent medical examination. [177-180]

This court concluded that, where a defendant's right under G. L. c. 263, § 5A, has been violated, that violation gives rise to a presumption that the defendant has been prejudiced, in that his opportunity to obtain and present potentially exculpatory evidence has been restricted or destroyed; and further, that such presumption may be overcome by overwhelming evidence of intoxication or other evidence indicating that the omission was not prejudicial in the circumstances. [180-181]

Where a defendant charged with operating a motor vehicle while under the influence of intoxicating liquor was denied his right under G. L. c. 263, § 5A, to have an independent medical examination, the matter was

remanded for a determination whether the prejudice the defendant had suffered was harmless in the circumstances. [181]


COMPLAINT received and sworn to in the Pittsfield Division of the District Court Department on April 7, 1995.

A motion to dismiss was heard by *Fredric D. Rutberg,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Christopher J. Walsh,* Assistant District Attorney, for the Commonwealth.

*Robert J. Carnes* for the defendant.

FRIED, J. The defendant was charged with driving while under the influence of alcohol. He moved to dismiss the charge, alleging a violation of his right to an independent medical examination under G. L. c. 263, § 5A. The motion judge granted the motion. The Commonwealth appealed. We transferred the case here on our own motion and now remand for further proceedings consistent with this opinion.

I

Shortly after midnight, a State trooper saw the defendant driving erratically and, after following him for a while, stopped him. While speaking with the defendant, the trooper noticed that his speech was slurred and that there was an odor of alcohol coming from his vehicle. The trooper then asked the defendant to step out of his vehicle to perform a series of field sobriety tests. The defendant admitted that he had had something to drink that evening. He had some difficulty performing various sobriety tests, skipping and transposing some letters on the alphabet test, skipping some numbers and counting too far on the "count backwards" test, and losing his balance during the one-legged stand. The trooper concluded that the defendant was intoxicated, arrested him, and transported him to the State police barracks.

At the barracks, an inventory of the defendant's possessions showed that he had with him $465 in cash. The defendant was informed shortly after 1 A.M. of his Miranda rights and of his rights to make a telephone call, take a breathalyzer test, and have an independent medical examination. He refused to sign a form acknowledging that he had been informed of these rights,

refused the blood test offered by the police, and refused to take a breathalyzer test. He did, however, inform the police that he wished to exercise his right to an independent medical examination. He also exercised his right to use the telephone and asked his father to come to the barracks for him. The trooper stood nearby during this telephone call and heard what the defendant said. The defendant's father did come to the barracks, but was denied access to his son. Neither the defendant nor the police had told the father that the defendant had asked for an independent medical examination. About twenty-five minutes after the defendant arrived at the barracks, the desk officer at the barracks called a bail magistrate[1] to arrange a bail hearing. The desk officer told the magistrate that the defendant had been arrested for driving while under the influence and told him that he smelled of alcohol and that he had bloodshot eyes and slurred speech. The magistrate declined to come to the barracks to hold a bail hearing at that time and told the police to hold the defendant until the morning. The magistrate made this decision according to his policy of holding until morning defendants arrested for driving while under the influence who had refused to take a breathalyzer test. The defendant was finally released at approximately 8:40 A.M.

The defendant filed a motion to dismiss the complaint, alleging a deprivation of his right to a prompt bail hearing and of his right to an independent medical examination under G. L. c. 263, § 5A.[2] The motion judge granted this motion, finding that the police had informed the defendant of his right to such an examination and that the defendant had told the police of his intention to exercise it, but that the bail magistrate had been remiss in refusing to hold a bail hearing according to G. L. c. 276, § 58. This prevented the defendant from exercising his right under § 5A.

The Commonwealth appealed from the dismissal of the

---

[1]General Laws c. 276, § 58, provides, in part, that a "justice or a clerk or assistant clerk of the district court, a bail commissioner or master in chancery" may conduct a bail hearing. These officials are referred to as bail commissioners. See G. L. c. 276, § 82.

[2]General Laws c. 263, § 5A, states, in part: "A person held in custody at a police station or other place of detention, charged with operating a motor vehicle while under the influence of intoxicating liquor, shall have the right, at his request and at his expense, to be examined immediately by a physician selected by him. The police official in charge of such station or place of detention, or his designee, shall inform him of such right immediately upon being booked, and shall afford him a reasonable opportunity to exercise it."

charges against the defendant, arguing that dismissal was inappropriate because the police fulfilled their obligations under G. L. c. 263, § 5A, and under G. L. c. 276, §§ 57-58, which concerns a defendant's right to a bail hearing.

## II

In most of the cases in which a defendant moves for dismissal due to a G. L. c. 263, § 5A, violation, the defendant's primary allegation is that his rights have been violated by police conduct, either by their failure to apprise him of his rights under that section or by their active hindrance of his exercise of those rights. In this case, by contrast, the primary allegation is that the defendant's rights were violated by the bail magistrate, who declined to come to the police barracks to hold a bail hearing immediately on being notified by the police of the defendant's arrest and detention.

It is undisputed that the police informed the defendant of his right to an independent medical examination, as they are required to do by § 5A. As the defendant recognizes, once the police have fulfilled their duty to inform a defendant of his right under § 5A, they have no obligation to help him in exercising that right. See *Commonwealth* v. *Hampe*, 419 Mass. 514, 520 (1995); *Commonwealth* v. *Alano*, 388 Mass. 871, 876-877 (1983); *Commonwealth* v. *McIntyre*, 36 Mass. App. Ct. 193, 202, 204 (1994). Rather, the statute places on the defendant the responsibility of availing himself of that right once told of it. See *Commonwealth* v. *Finelli*, 422 Mass. 860, 862 (1996). If he does not do so, he cannot later seek dismissal of the charges against him based on a violation of § 5A, because there has been no violation of that right. In this case, the motion judge specifically found that the defendant asserted his right to an independent medical examination. Although the Commonwealth asserts in its brief that the defendant did not attempt to exercise this right, we defer to the motion judge's finding of fact in the absence of clear error. See *Commonwealth* v. *Magee*, 423 Mass. 381, 384-385 (1996), and cases cited.

Although the police were not required to assist the defendant in exercising his rights and thus were not, for example, required to transport him to the hospital for administration of a blood alcohol test or to arrange for a physician to travel to the police station, see *Commonwealth* v. *Hampe, supra* at 521; *Commonwealth* v. *Rosewarne*, 410 Mass. 53, 54-55 (1991); *Com-*

*monwealth* v. *Alano, supra*; *Commonwealth* v. *McIntyre, supra* at 204, they were obligated to afford the defendant a "reasonable opportunity" to exercise his right to an independent medical examination, see *Commonwealth* v. *Ames*, 410 Mass. 603, 606 (1991); *Commonwealth* v. *McIntyre, supra* at 203, and were forbidden from impeding his exercise of that right, see *Commonwealth* v. *Alano, supra* at 876-877. The defendant argues that the police in fact interfered with his exercise of the right to an independent examination by failing, when they called the bail magistrate, to inform him that the defendant had money on his person, that his father was coming to pick him up, or that he was exercising his right to an independent medical examination. He argues further that the bail magistrate also violated his § 5A right by failing to conduct a bail hearing with reasonable promptness, which prevented him from obtaining an independent medical examination. With respect to § 5A, as is discussed below, the crucial question is whether a defendant's right to an independent medical examination has been violated, and not who violated it.

The right to a prompt bail hearing intersects with the § 5A right, see *Commonwealth* v. *Finelli, supra*; *Commonwealth* v. *Chistolini*, 422 Mass. 854, 858 (1996): a defendant ordinarily will be unable to exercise his right to an independent medical examination without being promptly released to bail. Normally, a defendant must go to a hospital if he wishes an independent medical examination because of the difficulty of finding medical personnel willing to come to a police station to draw blood for a blood test. See *Finelli, supra* at 861. And this usually means that the defendant will have to be released from custody, as the police have no obligation to transport him to the hospital for the blood test, see *Commonwealth* v. *Hampe, supra* at 521; *Commonwealth* v. *Rosewarne, supra* at 54; *Commonwealth* v. *Alano, supra* at 876-877; *Commonwealth* v. *McIntyre, supra* at 204, and normally refuse to do so, see, e.g., *Commonwealth* v. *Rosewarne, supra* at 54 (defendant telephoned hospital to arrange test but police refused to transport him); *Commonwealth* v. *McIntyre, supra* at 201 (police refused to transport defendant to hospital four blocks away). Because the evidence that may be obtained through the blood test is fleeting, such a test must be conducted promptly; thus, the bail hearing must be conducted promptly. Where the bail magistrate refuses to conduct a prompt bail hearing, the arrestee's right to an independent medical examination is necessarily frustrated.

There was no permissible ground for the bail magistrate's refusal to hold a bail hearing for the defendant promptly on being notified of the defendant's arrest. Cf. *Commonwealth* v. *Troy*, 38 Mass. App. Ct. 969, 970 (1995) (motion judge's view that there was "nothing improper in the police officers' holding the defendant in custody until he had sobered up" was "wrong"). He declined to come to the barracks to conduct a bail hearing according to a "policy" of his own, pursuant to which he asked the police whether a detainee had submitted to a breathalyzer test and, if not, what was the officer's opinion of the detainee's state of intoxication. He would then instruct the police to hold until morning those detainees who had refused to take the breathalyzer test. In an affidavit submitted by the bail magistrate to the motion judge, he stated that his reasons for ordering such detainees to be held until morning were the "safety of the public as well as . . . avoid[ance of] personal liability for actions of the defendant post-release."

General Laws c. 276, § 58, provides that a "justice or a clerk . . . shall, when a person is held under arrest or committed either with or without a warrant for an offense other than an offense punishable by death . . . hold a hearing in which the defendant and his counsel, if any, may participate and inquire into the case and shall admit such person to bail on his personal recognizance without surety unless said justice [or] clerk . . . determines, in the exercise of his discretion, that such a release will not reasonably assure the appearance of the person before the court." Section 58 does not provide for the consideration of public safety in determining whether to release a person to bail.[3] Rather, the only permissible consideration is whether the defendant is reasonably likely to reappear before the court. See *Hampe, supra* at 519 ("an arrestee must be released on bail without surety unless there is a risk that he will not appear in court"). Moreover, it cannot be argued that the police were properly holding the defendant in protective custody because they did not go through the statutory procedures prerequisite to such custody. See *id.* at 521-522. Nor can the bail magistrate's actions be justified on the basis of Rule 28 of the Rules Govern-

---

[3]The only reference in § 58 to public safety, which permits the court to consider whether the release of an individual will seriously endanger any person or the community where the individual has been arrested for committing an offense while on release pending adjudication of a prior charge, is inapplicable in the present case.

ing Persons Authorized to Take Bail (1998), which requires that persons admitted to bail understand the nature of bail and any conditions of release. Where an individual is so intoxicated that he cannot be expected to understand the nature of the bail proceedings, intoxication is a "justifiable basis for extending the reasonable time delay" before which the bail hearing must be held. *Chistolini, supra* at 857. See *Finelli, supra* at 863. There has been no allegation in this case that the bail magistrate's delay in conducting the bail hearing was based on his belief that the defendant could not understand the proceedings, and the evidence does not suggest that the defendant was unable to do so.[4]

Because the bail magistrate was not justified in refusing on public safety grounds to come to the barracks to conduct a bail hearing, he failed to fulfil his obligations under § 58, which states that he "shall" conduct such a hearing on being notified of the individual's arrest, see *Hampe, supra* at 519, and under Rule 14 of the Rules Governing Persons Authorized to Take Bail.[5] As the court has said, "[p]art of the responsibility of a bail commissioner is, as rule 14 provides, 'to respond with all reasonable promptness to calls for their services.' " *Hampe, supra*, quoting Rule 14. The definition of promptness has not been precisely defined, and "[n]either the Federal or State Constitution[], the bail statute, G. L. c. 276, §§ 57-58, Rule 14 of the Rules Governing Persons Authorized to Take Bail (1996), nor our case law establish a fixed time period within which a bail hearing must be held." *Commonwealth* v. *Falco*, 43 Mass. App. Ct. 253, 255 (1997). This court has, however, inferred from the six-hour limit on police questioning, see *Commonwealth* v. *Rosario*, 422 Mass. 48, 56 (1996), that bail hearings should be held within roughly six hours of booking. See *Chistolini, supra* at 856. Where the bail magistrate waited for over seven hours to conduct the bail hearing, he failed to respond with the promptness required and, therefore, violated the defendant's right to a prompt bail hearing.

This violation, in turn, resulted in the frustration of the

---

[4]That an arrestee must be released on cash bail or bail on his own recognizance does not mean that the police must give him the keys to his vehicle and allow him to drive off if he is not in a fit condition to do so.

[5]Rule 14 states that persons authorized to take bail are entitled to "participate fairly in the out-of-court bailing activity," but only "so long as they are willing and able to respond with all reasonable promptness to calls for their services." See *Commonwealth* v. *Hampe*, 419 Mass. 514, 519 (1995).

defendant's right to an independent medical examination under § 5A. For the right to an independent examination to mean anything, it must include the opportunity to have the examination conducted as promptly as possible. The opportunity to collect potentially exculpatory medical evidence is destroyed if the defendant is made to wait seven hours before obtaining it. Therefore, because a defendant ordinarily must be released on bail before he is able to obtain an independent medical examination, the bail hearing must be conducted promptly if § 5A is to have any force. This court decided in *Hampe, supra* at 518, 521, that "for G. L. c. 263, § 5A, to have its intended force and effect, it must be read as requiring the police to telephone a bail commissioner" in order "to facilitate a defendant's release in a timely fashion." This requirement, addressed specifically to police conduct, would mean nothing if it were not assumed that the bail commissioner would then hold a bail hearing and release the defendant "in a timely fashion." *Id.* at 521.

In a case in which the defendant has asserted his § 5A right, it will not do to define timeliness by the six-hour guideline for promptness applicable to bail hearings in general. Because of the fleeting nature of the evidence that might be obtained as a result of the medical examination, the bail hearing in such a case must be held as promptly as possible. Therefore, when the bail commissioner is notified that an individual has been arrested and wishes to exercise his right to an independent medical examination under § 5A, the bail commissioner must respond as promptly as he is able. The bail magistrate's delay of more than seven hours in this case does not meet this standard of timeliness.

In cases where the defendant has not asserted his § 5A right, the general rule of promptness, loosely delimited by the six-hour guideline, still holds. Therefore, to ensure that the bail magistrate responds as promptly as possible, it is crucial that he be aware when a defendant has asserted the § 5A right. When it is the police who notify the bail magistrate that an individual who has asserted the right has been arrested, the police must also inform the magistrate that the defendant wishes to exercise the right. The police may, of course, leave it to the defendant to call the bail magistrate after informing the defendant of this possibility and permitting him to use the telephone. In that case, it will be up to the defendant to tell the bail magistrate that he wishes to exercise his § 5A right. In the instant case, where the

trooper called the bail magistrate, he should have informed him ·that the defendant had expressed a desire to obtain an independent medical examination. If the arrested person expresses a desire for an independent medical examination after an officer has called the bail commissioner, he must call again or allow the arrested person to do so. To avoid this complication, it would be better to make the § 5A statement before the bail magistrate is called.

## III

It remains to determine the appropriate remedy for the violation of the defendant's rights to a prompt bail hearing and to an independent medical examination. The defendant moved that the charge against him be dismissed, and the motion judge granted the motion. The Commonwealth argues that dismissal is an inappropriate remedy in the circumstances presented here. "Section 5A does not state the consequences that should flow from a violation of its terms." *Commonwealth* v. *Ames*, 410 Mass. 603, 607 (1991). Therefore, the task of fashioning remedies is left to the courts, which must provide a remedy appropriate to the circumstances of each case. See *Commonwealth* v. *Andrade*, 389 Mass. 874, 878 (1983).

In determining the proper remedy for violations of § 5A, we have never explicitly set out the appropriate method of analysis. This has created confusion about whether and in what circumstances dismissal is required. Some decisions have suggested that a major factor in determining whether to dismiss the charge is whether dismissal would deter future violations by the police. In *Commonwealth* v. *Atencio*, 12 Mass. App. Ct. 747 (1981), the defendant was taken to a hospital by the police after being injured in an automobile accident. The police, who were preoccupied with duties including assisting other victims of the accident, did not inform the defendant of his right to an independent medical examination by the physician of his choice under § 5A. The defendant was, however, treated for his injuries at the hospital. Despite the violation of § 5A, the Appeals Court upheld the motion judge's denial of the motion to dismiss because "the available police officers were fully occupied by various aspects of the exigency. There was no indication in the evidence of any police attempt or desire to avoid or subvert the policy behind § 5A. Thus the application of any sanction of exclusion of evidence would have been wholly inappropriate

and would not have had any 'prophylactic' tendency to prevent improper police conduct in other cases."[6] *Id.* at 750.

Other decisions have been less explicit about the importance of the deterrent effect but have considered, in fashioning a remedy, the state of mind of the police when they violated the statute. In *Commonwealth* v. *Hampe, supra* at 521, 522, this court stated that "[d]ismissal may be deemed appropriate where there is deliberate or intentional misconduct by the police," and that the "frame of mind or the good faith of the police" is relevant in determining the proper remedy. See *Rosewarne, supra* at 57 (in fashioning remedy, court should consider extent of police misconduct). In *Commonwealth* v. *Kelley*, 404 Mass. 459, 464 (1989), quoting *Commonwealth* v. *Andrade*, 389 Mass. 874, 879 (1983), this court remanded a case for further consideration of factors including "the absence of police effort to inform the defendant of his right to an examination" and "exigent circumstances 'which might have justified the police officers' failure to communicate the defendant's right to him.' " Both of these factors are relevant to whether the police intentionally violated the defendant's rights and, therefore, to whether the violations could be deterred through dismissal of the charge or suppression of evidence. The considerations mentioned in these decisions would not have been relevant unless the court considered dismissal to be a prophylactic measure.

Some decisions have suggested that dismissal is an unduly severe remedy for violation of § 5A rights and that suppression of evidence obtained after the violation occurred would be more appropriate. Such remedies are similar to those implemented under the exclusionary rule for violations under the Fourth Amendment to the United States Constitution. In *Hampe, supra* at 523-524, this court noted that dismissal is not appropriate when there is overwhelming evidence of intoxication, and went on to say that the appropriate remedy in such cases is ordinarily suppression of the breathalyzer result as well as suppression of police testimony about events occurring after violation of the right.

---

[6]The opinion goes on to state that the defendant was "afforded prompt and thorough medical care and examination at the hospital, and was seen by the doctors there. He thus has established no significant prejudice from the omission of the statutory notice." *Commonwealth* v. *Atencio*, 12 Mass. App. Ct. 747, 750 (1981). The court does not explain, however, how the fact that the defendant obtained some form of medical care is relevant to his right to obtain the independent medical examination permitted the defendant under § 5A.

   The Commonwealth urges that, because it was the bail magistrate and, at least in its view, not law enforcement officers who violated the defendant's rights, dismissal is not an appropriate response. The Commonwealth cites as support *Arizona v. Evans*, 514 U.S. 1 (1995), a case involving a motion to suppress evidence obtained through an unconstitutional police search that would not have occurred but for a clerical error by a court clerk. In *Evans*, the Supreme Court of the United States held that the exclusionary rule did not apply where the Fourth Amendment violation resulted from the actions of a judicial officer, because exclusion of evidence in such a case would not have the deterrent effect on law enforcement officers that is the purpose of the exclusionary rule. *Id.* at 15-16.

   This court's occasional emphasis on considerations of deterrence and prophylactic effect in the § 5A context and the Commonwealth's reliance on *Evans* in this case are both misplaced, and for the same reason. The exclusionary rule, which *Evans* addressed, prohibits the use of otherwise probative and often highly reliable evidence in order to deter future violations by the police of a right extrinsic and even contrary to the truth-finding process — the right under the Fourth Amendment to be free from unreasonable searches and seizures. The right to an independent medical examination under § 5A, by contrast, is a right meant to enhance the establishment of the truth of the accusation by enabling the defendant to obtain potentially exculpatory evidence. Therefore, dismissal is appropriate where § 5A rights have been violated, regardless of whether the violation occurred at the hands of the police or of the bail commissioner, because dismissal in such a case is not solely a prophylactic measure intended to deter future misconduct by either. Rather, it is primarily meant to prevent prosecution and conviction of an individual who, had he been able to obtain an independent medical examination, might have been able to disprove or deflect the charges against him. A violation of § 5A interferes with an accused person's ability to rebut the charges against him. The accused suffers that denial of right, whether it is a law enforcement or a judicial officer who is responsible for the violation, and whether the action is done wilfully or in good faith. In any event, the truth-finding process is not as reliable as the Legislature required it to be. To be sure, dismissal or exclusion of evidence may also serve to deter future violations, but that is a secondary consideration: it is the present violation that in itself interferes with the process the Legislature required.

This reasoning is entirely consistent with our cases holding that a violation of § 5A does not mandate dismissal where there is overwhelming evidence of intoxication. See *Commonwealth* v. *Priestley*, 419 Mass. 678, 680-681 (1995); *Hampe, supra* at 523; *Ames, supra* at 607. In such a case, the evidence that might have been obtained through an independent medical examination would have been unlikely to assist the defendant in mounting a defense and would not have contradicted the other evidence of intoxication in the case. Whether there was overwhelming evidence of intoxication is a decision to be made by the courts in fashioning a remedy for a § 5A violation, not one that may be made by the police or bail commissioner in deciding that they need not comply with the requirements of § 5A. It remains true that "strict compliance with the requirements of G. L. c. 263, § 5A, should be the unaltered practice." *Commonwealth* v. *McIntyre*, 36 Mass. App. Ct. 193, 202 (1994), quoting *Commonwealth* v. *Gruska*, 30 Mass. App. Ct. 940, 942 (1991).

In *Commonwealth* v. *Andrade*, 389 Mass. 874, 879 (1983), responding to the Commonwealth's argument that the defendant had failed to show prejudice, we said that we did not "think . . . that the defendant should be required to make this proof." Our reasoning there is consistent with today's holding. We did not mean to suggest that prejudice is irrelevant, but that a violation of § 5A will result in prejudice in most cases where the Commonwealth has not presented overwhelming evidence of intoxication. In addressing the appropriate remedy, the court stated that the remedy should be "adequate to cure potential or actual prejudice resulting from a violation of G. L. c. 263, § 5A." *Id.* at 878. See *Hampe, supra* at 522-523, citing *Andrade, supra* at 878-879, 881-882. Other cases have relied explicitly on a prejudice inquiry, stating that dismissal would not be appropriate absent such a showing. See *Commonwealth* v. *Finelli*, 422 Mass. 860, 863 (1996) ("Dismissal is a drastic remedy and in this context is not proper absent prejudice"); *Commonwealth* v. *Atencio*, 12 Mass. App. Ct. 747, 750 (1981) (no dismissal because defendant "established no significant prejudice from the omission of the statutory notice").

Where a defendant's right under § 5A has been violated, the violation itself is prima facie evidence that the defendant has been prejudiced in that his opportunity to obtain and present potentially exculpatory evidence has been restricted or

destroyed. This presumption of prejudice, however, may be overcome by overwhelming evidence of intoxication, as discussed above, or by other evidence indicating that the omission was not prejudicial in the circumstances. See, e.g., *Ames, supra* at 606-608 (police transported defendant to hospital for treatment of injuries and offered him a blood test, which he refused; although police did not inform defendant of § 5A right specifically, there was no prejudice because judge found that defendant would not have exercised it even if it had been offered); *McIntyre, supra* at 203 (police violated § 5A by failing to inform defendant of right to independent examination; defendant, an attorney, was aware of right and exercised it; no prejudice because literal compliance with statute would not have accorded defendant any more notice than he already had); *Gruska, supra* at 941-942 (police showed defendant copy of § 5A, but did not literally comply with statute by posting copy of statute or giving copy to defendant; no prejudice because defendant was adequately notified of § 5A right).

Applying this rule to the instant case, we must consider whether the prima facie prejudice to the defendant's case, created by the bail magistrate's violation of his § 5A right, is overcome by other evidence. The motion judge made no explicit factual findings concerning the level of the defendant's intoxication, and this question is disputed by the parties. We therefore remand the case to the District Court for a determination whether the evidence of the defendant's intoxication was overwhelming or whether other factors rendered the violation harmless in the circumstances.

*So ordered.*