Cowin, J.
The defendant, Richard Hall, is charged with operating under the influence of intoxicating liquor, (G.L.c. 90, s. 24), and with operating under the influence of intoxicating liquor as a second offense (G.L.c. 90, s. 24). The defendant has filed a motion to dismiss and/or suppress claiming that the police, by placing him in protective custody, improperly impeded his right to access to an independent medical examination.
A hearing was held on the defendant’s motion on April 2, 1999.[1] At the outset of the hearing, it was agreed by the parties that the following issues were the only ones to be addressed by the Court: the content of statements regarding an independent medical examination made by the defendant’s mother, Mrs. Hall, and by the defendant at the Maynard Police Station shortly after the defendant’s arrest; whether the police in fact placed the defendant in protective custody; and if so, whether the police may properly place someone in protective custody after having arrested him for operating under the influence of intoxicating liquor; and whether there was overwhelming evidence of the defendant’s intoxication.
At the hearing the following witnesses testified: Elizabeth Hall, the defendant’s mother; and Sergeant Charles Walsh and Officer Brian Connemey, both of the Maynard Police Department. After the hearing and evaluation of the credibility of the witnesses, the Court denies the defendant’s motion.
FINDINGS OF FACT
On March 14, 1998, Sergeant Charles Walsh, a thirteen-year officer with the Maynard Police Department, was patrolling and looking for persons under the influence of alcohol and/or drugs. Sergeant Walsh has been trained in recognizing the signs of alcohol impairment. In fact, he leads the Maynard Police Department in arrests for operating under the influence of intoxicating liquor and has been named MADD’s “Officer of the Year.” Just before one in the morning, Sergeant Walsh observed a motor vehicle crossing over the double yellow (center) line on Acton Street, going into the lane for oncoming traffic. The officer followed the car for a short distance and saw the car cross over the center line another eleven times. One-quarter to one-half of the car was in the opposite lane each of the these times.
Eventually, the car made a turn onto Concord Street, crossing all the way into the oncoming lane, then traveling very close to the curb and actually driving up over the sidewalk. The officer then put on his blue lights and siren signaling the car to stop. The car did not stop immediately. About one hundred yards later, the car did stop.
The officer approached it and saw that the defendant, Richard Hall, was the driver of the car. The defendant was known to the officer.[2] The officer and the defendant had spoken to each other many times in the past. Sergeant Walsh observed a strong odor of alcohol on the defendant’s breath and the defendant was swaying on his seat. As the two engaged in conversation, the officer noticed that the defendant’s speech was slurred and slow compared to the usual manner in which the defendant spoke. The officer *179 asked the driver for his license and registration. The defendant fumbled in his glove compartment and searched through his papers. He eventually stopped at one paper and stared at it, but did not turn it over to the officer. The defendant then had difficulty searching through his wallet as he looked for his license. When he did get his license from his wallet, the officer put his hand by the window and the defendant reached out past the officer’s outstretched hand. The defendant held his license there and the officer took it from him.
When back-up assistance arrived in the form of Officer Connerney, the police asked the defendant to step out of his car. When the defendant did so, he was extremely unsteady on his feet and had to lean on his own car for support. When he was directed to walk to Sergeant Walsh’s cruiser, the defendant weaved his way between his car and the cruiser and then used the cruiser to support himself again. The police asked Hall to take some tests, but he refused to do so.
The defendant’s eyes were red and glassy. His speech was slurred and slow. Both the officers formed the opinion that the defendant was under the influence of intoxicating liquor and that his ability to drive was impaired and they arrested him for said offense.
The police drove the defendant to the police station. They had to assist him out of the cruiser and into the station and up the stairs. In fact, it required two police officers to support him.
The Maynard Police also placed the defendant in protective custody pursuant to G.L.c. 111B, s. 8. It is not clear from the evidence exactly when the defendant was placed in protective custody. It appears most likely that the decision was made at or about the time of the booking procedure. The police placed the defendant in protective custody in good faith as the defendant was incapacitated as defined in c. 111B, s. 3 (due to his intoxication, he was likely to suffer or cause physical harm or damage property). The defendant would have been unsafe even walking the street at this time due to his intoxication. Further, the police abided by the requirements of the protective custody statute, c. 111B, s. 8. See infra. Pursuant to the protective custody statute, the police called a local facility to request treatment services. “Abed” was not available.
The defendant was booked by Officer Wilson assisted by Officer Connerney. During booking, the defendant answered the routine booking questions. The Maynard Police Department uses the same form as both an arrest/booking report and as a protective custody report. See Exhibit 1 attached hereto. The police put an "x” in the appropriate box to denote for which purpose it is being used. In the instant case, an “x” appears in both boxes, indicating tha„ the report was used as both an arrest/booking report and a protective custody report. The form contains within it lines for all the information needed for a booking report as well as the information required for a protective custody report under G.L.c. 11 IB, s. 8.[3] In regard to the latter, the police placed an “x” in the box indicating that a “detox” facility had been notified.
As a part of the booking/protective custody procedure, the defendant was advised of his right to a breathalyzer test, see G.L.c. 90, s. 24(l)(e) and G.L.c. 111B.[4] He refused this test. The defendant was also informed of his right to make a phone call, id., and he exercised this right by calling his mother sometime after 1:00 a.m. The defendant, in fact, was given free access to the telephone and could have made more than one telephone call.
Having been advised of his right to obtain an independent medical examination, see. G.L.c. 263, s. 5A, the defendant asked his mother (Mrs. Hall) to locate a doctor to perform such a test. His mother, upset by the fact that her son had been arrested for operating under the influence and annoyed at having been awakened at this hour, told her son that she did not know of any doctor who could accommodate this request. After ending the phone conversation, the defendant’s mother decided to go to the police station. She dressed and drove to the police station, arriving sometime between 2:00 and 3:00 a.m. The police station was only about two blocks from her home. It is located at a main intersection, where four main streets meet in the town of Maynard.
Mrs. Hall spoke with Sergeant Walsh as he was leaving the station. She was crying and upset and wanted to know whether she had done the right thing by not calling a doctor as her son had requested. She said that she was sick and tired of her son’s alcohol problem and afraid that he would hurt himself or someone else by his drinking and driving.[5] Sergeant Walsh did not reduce the mother’s statement to writing at the time, as he wanted to avoid making her a witness when it was not necessary. Later, when Sergeant Walsh was informed that Mrs. Hall was to be a witness at the hearing, he did write a report of his encounter with her.
At approximately 4:45 a.m., a bail commissioner arrived and set bail in the amount of $250.00, which amount the defendant posted. The defendant was released at 7:51 a.m. and walked the short distance to his home.
DISCUSSION
The issue posed by this case is whether the police, by placing a defendant in protective custody in good faith and not for the purpose of defeating the defendant’s rights to bail or to an independent blood test, violated the defendant’s right to such a test.
General Laws, c. 276, ss. 42, 57 and 58 provide that an arrested party has the statutory right to prompt release on bail. General Laws, c. 263, s. 5A, confers on a defendant arrested for operating under the influence of intoxicating liquor the right to a reasonable opportunity to obtain his own evidence regarding his *180 alleged intoxication. Commonwealth v. Hampe, 419 Mass. 514, 519 (1995). Finally, G.L.c. 111B, s. 8 authorizes the police to put into protective custody any person who is incapacitated and to assist him to his residence, to a facility or to a police station. If the person is assisted to a police station, the nearest facility is to be notified that the person is being held in protective custody and, if a bed is available, transportation of the person to the facility is to be arranged. Id. If suitable treatment at a facility is not available, an incapacitated person may be held in protective custody at a police station until no longer incapacitated or for a period of not longer than twelve hours, whichever is shorter. Id. The statutes are to be read by the courts as part of a statutory scheme which is to be harmonized so as to give full effect to the expressed intent of the Legislature. Commonwealth v. Hampe, supra at 518.
The evidence obtained through an independent blood or breath test is extremely fleeting and time is of the essence in obtaining the requisite testing. Commonwealth v. Andrade, 389 Mass. 874, 881 (1983). However, the statute “places primary responsibility for an independent blood test in the hands of the defendant, not the police.” Commonwealth v. Lindner, 395 Mass. 144, 148 (1985). Thus, the police have no obligation to assist the defendant in obtaining a medical examination. Commonwealth v. Ames, 410 Mass. 603, 608 (1991). The police need do no more than inform the defendant of the right and provide him with the opportunity to make a telephone call. However, they may not prevent or hinder a defendant’s reasonable and timely attempt to obtain such an examination. Commonwealth v. Rosewarne, 410 Mass. 53, 55 (1991).
The Legislature has expressed clearly its policy to immobilize the person whose drinking problems have interfered with his ability to drive or to act safely. This is a proper purpose and is obviously paramount in the legislative mind to the interest the Legislature created (by statute) in enabling the defendant to obtain an independent medical examination. When these two purposes conflict, the immobilization of the defendant so that he cannot injure himself or others is paramount. Thus, despite the legislative concern that the right of a defendant to an independent examination under s. 5A be protected, Andrade, supra at 878, the defendant may be immobilized by the arrest itself if he is unable to post bail, or, even if he is bailed, for the time it takes him to raise the ball sum. Neither the Legislature nor the courts apparently deem this to be violative of the defendant’s right to a medical examination, as long as the police do not in bad faith prevent or hinder the defendant’s reasonable and timely attempt to obtain the examination. Rosewarne, supra at 55. Placing the defendant in protective custody pursuant to c. 111B, s. 8 is simply another permissible form of immobilizing the defendant which may have the side effect of impeding his ability to obtain the independent examination. Given the presupposition that the defendant was appropriately placed in protective custody, I conclude that the Legislature was aware that the implementation of the protective custody statute could and would impact the defendant’s rights under s. 5A, a permissible decision by the Legislature.
I am assisted in reaching this conclusion by application of familiar rules of statutory construction. When the Legislature enacts a statute on one subject, it is deemed to be aware of other statutes on the same subject. Commonwealth v. Wade, 372 Mass. 91, 94 (1977). G.L.c. 268, s. 5A was added to the General Laws in 1958. See St. 1958, c. 401. The protective custody statute was added thirteen years later in 1971. See St. 1971, c. 1076, s. 1. Since the Legislature was aware that the right to an independent medical, examination existed, its subsequent enactment of the protective custody statute reflects an intention that under certain circumstances the Section 5A right will be affected. Further, the right to the examination is a statutory one, and is not constitutionally required. The Legislature, having created the right, can eliminate it totally or may limit it. Here, it has restricted the right to the independent examination much as it has restricted said right by the bail statute.
Another rule of statutory interpretation is that all statutes must be construed, when possible, to constitute a harmonious whole consistent with the legislative purpose. Mathewson v. Contributory Retirement Appeal Board, 335 Mass. 610, 614 (1957). Some meaning, if possible, must be given to the later legislation. Id. The legislative purpose of the most recent enactment, c. 111B, is to attempt to control the problem of excessive drinking. Given that goal, the Legislature clearly did not intend that those arrested for offenses involving drunk driving would be released immediately while still inebriated so that they could drive the streets seeking an independent medical examination. Thus, the impact on the right to an independent medical examination is not inadvertent; it is intentional and consistent with the Legislature’s effort to alleviate the drunk driving problem. To that end, the Legislature has permitted restrictions on the right to the independent medical examination.
Commonwealth v. King, 429 Mass. 169 (1999), does not mandate a contrary result. In King the Supreme Judicial Court was confronted with an improper decision by a bail magistrate delaying the right to bail. This interfered with the defendant’s s. 5A rights. Thus, in King, the policies of the two statutes (the right to bail and the right to an independent examination) were complimentary and the Court required that both statutes be effectuated so as to implement the Legislature’s intent. The instant case, however, presents a conflict between two policies (the protective custody statute and the right to an independent examination), both of which cannot be reconciled in certain situations. Since the Legislature was aware of *181 the s. 5A right when it enacted c. 111B, s. 8, the Legislature presumably intended that at times the s. 5A right would be delayed, or even defeated altogether, by placing a person in protective custody.
The protective custody statute provides that a person may be held in protective custody at a police station until he is no longer incapacitated or for no more than twelve hours, whichever is shorter. Defendant maintains that his rights were violated when his condition was not reassessed when he made bail at 4:45 a.m. By implication, the police are obligated to reassess the condition of sobriety of a person held in protective custody to determine as soon as possible when he is no longer incapacitated. The statute does not require this reassessment of the defendant’s condition to be made at any specific time. Rather, the statute requires that the person in protective custody be released when he is no longer incapacitated. That requirement must be effectuated. The burden of proof here is on the defendant. There being no evidence on the subject of the state of defendant’s sobriety at 4:45 a.m., I infer that the police determined that the defendant was still incapacitated at that time. No evidence has been presented to the contrary on this issue and the burden in this case is on the defendant.[6]
The evidence indicates that the defendant was afforded the right to make more than one telephone call when he was booked and placed in protective custody. If he were not, a subsidiary issue is whether the police, by permitting the defendant the right to make one phone call, complied with the requirements of the protective custody statute. Any person arrested must be given the right to make a telephone call. G.L.c. 276, s. 33A. The protective custody statute also requires that a person placed in protective custody shall have and be informed of the right to make one phone call. G.L.c. 11 IB, s. 8. It appears that, while it may not be the better practice, if a defendant is given the right to one phone call, such a call satisfies both statutes. The purpose of providing an individual the right to make a phone call is obviously to permit him to communicate to the outside world that he is in custody and to request that appropriate action be taken on his behalf. It is to avoid restraining persons with no notice as to their whereabouts. The right is provided in the protective custody statute in the event that a person is placed in protective custody and not arrested and booked. Such a person must be informed of and provided with the right to make one phone call. If the person is informed of said right and given the opportunity to one call, whether it be pursuant to the booking statute or to the protective custody statute, the purpose of the right is fulfilled. Further, the Legislature has never indicated an intent that a person be provided with a right to more than one telephone call.
ORDER
For the foregoing reasons the defendant’s motion to suppress is. DENIED.

 The parties were granted leave to file supplemental mem-oranda by April 16, 1999.

 The defendant had worked on the officer’s home and had been a patron at a gym that the officer had previously owned.

 The information required under said statute is much the same as that required for any defendant who is booked, e.g., date, time and place of custody, name of the assisting officer and the officer in charge, whether the person held in custody exercised his right to a phone call or to a breathalyzer test and the results of such a test if taken.

 No findings are made regarding any other rights given to the defendant as the parties agreed that there is no issue as to these rights.

 Even assuming that Mrs. Hall would have been available and willing to drive her son to a facility to receive an independent medical examination (and I have not so found), the fact that the defendant was sufficiently intoxicated to require his placement in protective custody indicates that the police should not have released him under any circumstances.

 One of the questions the Court was asked to address was whether there was overwhelming evidence of the defendant’s intoxication. That issue is no longer relevant, as I have concluded that G.L.c. 263, s. 5A was not violated. See Commonwealth v. King, supra at 177-81 (remedy for violation of G.L.c. 263, s. 5A depends upon whether there is overwhelming evidence of defendant’s intoxication or whether other factors rendered the violation harmless).