DECISION
This matter is before the Court on the Defendant's motion to dismiss (or in the alternative, to suppress) the within driving under the influence charge on the twin grounds that he was denied his right to bail as well as his right to be examined by a physician of his own choice.
The Defendant was arrested by a Portsmouth police officer on February 11, 2007 at 11:47 p.m., and was immediately transported to the police department. At 12:09 a.m., the Defendant was read his rights and asked if he wanted to call anybody. The Defendant replied that he saw no reason to call anyone unless he could go home.[1] The officer then informed the Defendant that if he wanted to request a justice of the peace, "it's $200 cash just to have one show up." The officer clearly communicated to the Defendant that no call would be made to a justice of the peace unless and until the $200 cash was in "[the police department's] hands." Following this exchange, the Defendant attempted, unsuccessfully, to telephone Attorney Cort Chappell. He then left a message for attorney-of-record, Vernon Gorton, in which he stated, "I would like to get out of here tonight, maybe I'll try Chuck Levesque." Despite the fact that the officer had falsely assured the Defendant that the department's representatives would "make the phone calls" to the justice of the peace and would "leave messages on voice mail, pagers, their home number," the officer merely provided to the Defendant Attorney Levesque's office number. *Page 2 
Since the Defendant was in custody in the early morning hours (the phone call being placed at 12:11 a.m.), the provision of the attorney's business number was a meaningless gesture.
At 12:26 a.m., the Defendant refused to take a breathalyzer test. The Defendant argued that he relented and consented to take the test approximately 1 hour later, in a "last ditch effort to overcome his denial of bail and secure his release." (Defendant's Mem. p. 4). After he submitted to the test and was informed that he had failed, the Defendant simply asked, "so can I go home?" The officer emphatically reiterated that cash in the hands of the department was a prerequisite to a phone call being made by the department to a justice of the peace. After the Defendant asked if he could go home, the following exchange occurred:
 Officer: No . . . unless like I said, once the money comes, we'll call a justice of the peace, that's the best thing we can do . . .
 Defendant: Once the money comes? . . . the only way I can get the money is to go home and get it.
 Officer: You said you had a friend who would bring it to you, right?
 Defendant: Well I don't think that's going to happen. The only way I can get the money is to go home and get it . . . can you give me a ride home?
 Officer: It's against policy.
 Defendant: How am I going to get out?
 Officer: You'll be arraigned in the morning.
The Defendant asserts that he was unequivocally denied his right to bail and to arrange for an independent medical examiner pursuant to G.L. 1956 § 31-27-3. He characterizes the violation as "the result of active conduct of the police misinforming [him] that he was ineligible for financial reasons, to be released or even attempt to secure release." (Defendant's Memo. p. 7).
The State responds that "although a bail commissioner never responded to the police station, it should be emphasized that there is no legal right that a bail commissioner immediately respond within a specified time period." (State's Memo. p. 3). Furthermore, according to the *Page 3 
prosecution, the police "went above and beyond what they are required to do by actually assisting the Defendant in accessing telephone numbers and allowing him to make multiple calls." (State's Memo. p. 4).
Rhode Island General Law § 12-10-2 states, in pertinent part, that the justice of the peace's fee is to be arranged between the Defendant andthe justice of the peace and is not to exceed $200. [Emphasis supplied]. The arresting officer's instructions to the Defendant leave no room for interpretation — the officer explicitly stated that no justice of the peace would deign to appear without a $200 cash advance to the officer and that if said cash was provided, the officer would embark upon an attempt to contact the justice. Therefore, the Defendant was erroneously informed that, (1) the transmittal of $200 in cash to the officer was a prerequisite to a justice of the peace appearance; and (2) that the police would seek to locate a justice thereby depriving the Defendant of his right not only to contact the justice, but also his right to negotiate a fee.
It can not be gainsaid that the purpose of G.L. § 12-10-2(d) is to provide an arrestee with the opportunity to be released on bail when taken into custody during times when court is not in session. Clearly, this Defendant was not afforded his statutory and constitutional right to have an opportunity to secure his release.
Absent prompt and timely release, a Defendant's invocation of his right to a medical examination per G.L. § 31-27-3 is hollow "because of the fleeting nature of the evidence that might be obtained as a result of the medical examination. . . ." Comm. v. King, 429 Mass. 169, 176
(1999). The timeline of the events (and absence of events) in the instant case clearly establishes that the Defendant was deprived of his right under this statute as well. Although the Defendant urges dismissal, the Court must be mindful of the Supreme Court's edict inState v. Veltri, 764 A.2d 163 (R.I. 2001), i.e. "that even in cases in which evidence has been obtained in *Page 4 
violation of the Defendant's constitutional or statutory rights, the remedy usually imposed is not to dismiss the indictment or charges, but to suppress any evidence obtained because of the violation. . . ."Veltri, 764 A.2d at 167.
Although the arresting officer undeniably provided the Defendant with erroneous information, there is no evidence in the present state of the record that the officer acted with malice in a deliberate effort to deprive the Defendant of his rights. Thus, the Court concludes that the appropriate remedy to be afforded to the Defendant is suppression of the ill-gotten evidence.
Based upon the foregoing analysis and the facts furnished to the Court, the Court grants the Defendant's motion to suppress the results of the breathalyzer tests.
[1] The Defendant had earlier inquired if there was "any chance [he] could go home [that] night" to which the officer responded "we'll see what we can do." *Page 1